1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CARGILL INCORPORATED and              CASE NO. CV-F-07-349- LJO-SMS
     CAN TECHNOLOGIES,
12
                              Plaintiffs,          **ORDER   ON**
13
                                              **MOTION TO DISQUALIFY COUNSEL**
14   _____

15   _____
        vs.
16
     MATTHEW BUDINE; DOUGLAS W.
17   DEGROFF; DIVERSIFIED DAIRY
     SOLUTIONS, LLC; LUCIANA
18   JONKMAN; PROGRESSIVE DAIRY
     SOLUTIONS; TODD SCHWEGEL;
19   and BRIAN SUNDBERG
                              Defendants.
20   _____/

21                          **I. INTRODUCTION**

22          At the May 23, 2007 scheduling conference before this Court, Plaintiffs' counsel moved to

23   disqualify Mr. Roy Payne as counsel representing Plaintiffs Matthew Budine ("Budine"), Luciana

24   Jonkman ("Jonkman"), Brian Sundberg ("Sundberg"), and Progressive Dairy Solutions (collectively

25   referred to as "Progressive Defendants").  An order by this Court set a hearing on that motion for June

26   26, 2007 (Doc. 84).  On May 30, 2007, Plaintiffs filed a motion to disqualify all counsel appearing for

27   the Progressive Defendants who are also involved in an action entitled <u>John Burford, et. al. v. Cargill,</u>

28   <u>Inc</u>., U.S. District Court, Western District of Louisiana, Civil Action No. 05-0283 (hereinafter referred

                                            1

to as "Burford").  Lead counsel for the plaintiffs in Burford are Roy S. Payne ("Payne") and Sam N. Gregorio ("Gregorio"), APLC in Shreveport, Louisiana, and Harry DeHaan ("DeHaan") of Twin Falls, Idaho (collectively referred to as "Burford counsel").  Payne, Gregorio, and DeHaan recently appeared as counsel for the Progressive Defendants in this action, prompting the instant motion.

The issue presented is whether Burford counsel's representation of the Progressive defendants in this action gives rise to the appearance of impropriety and will have an adverse continuing affect on this judicial proceeding which would unduly prejudice Cargill and interfere with the administration of justice.  Cargill raises these legal and ethical issues based on: (1)  discussions between the Progressive defendants, especially Budine, and Cargill counsel in preparation of Cargill's defense in Burford; (2) the Protective Order in the Burford case; and (3) the confidentiality agreements between Cargill and Progressive defendants, at issue in this case.   The various complex relationships between the parties–Cargill, the Progressive defendants, and Burford counsel–span from California to Louisiana and raise a number of legal and ethical issues, including the attorney-client privilege, trade secret agreements, and a conflict of interest.  This Court finds that the danger of disclosure of protected information is substantial.  Accordingly, Plaintiffs' motion to disqualify Burford counsel is GRANTED.

## II. BACKGROUND

### A.    Progressive Defendants

In the case currently before this Court, Cargill filed a complaint against the Progressive defendants, Douglass DeGroff, and Todd Schwegel on March 1, 2007.  Cargill's complaint contains fourteen (14) claims, including, misappropriation of trade secrets, breach of contract, unfair competition, fraud, conversion, defamation, and breaches of duty.  On April 16, 2007, the Progressive Defendants answered the complaint, which included  41 affirmative defenses and eighteen (18) counterclaims against Cargill and CAN.

Budine was General Manager of the Pacific Coast District of CAN until he resigned from that position on January 31, 2007.  Declaration of Matthew BUDINE ("BUDINE Decl."), ¶ 3; Complaint, ¶ 29.  Budine had held that position since 2000.  Affidavit of Budine, ¶ 1, Ex. C to Carpenter Decl.  As General Manager, Budine supervised more than 180 employees.  Complaint, ¶ 29.  He was also a long-

standing member of Cargill's Dairy Vision Team.  Complaint, ¶ 30.  Budine signed a confidentiality agreement with Cargill.  *Id.*, ¶ 37.

Sundberg and Jonkman were dairy management consultants under Budine's management. Complaint, ¶¶ 31-32.  They both signed confidentiality agreements with Cargill.  *Id.* ¶ 38.  After leaving Cargill at the end of January 2007, Budine, Sundberg and Jonkman together formed Progressive Dairy Solutions, where they are all now employees. See Declarations of BUDINE, Sundberg and Jonkman.

In this action, Cargill alleges, among other claims, that the Progressive defendants breached the confidentiality agreements, misappropriated trade secrets, entered into unfair competition, breached their duty of loyalty and have defamed Cargill.

**B.    Burford v. Cargill**

On May 3, 2006, plaintiffs filed a Second Amended Class Action Complaint in the United States District Court, Western District of Louisiana, making national class allegations against Plaintiffs in this case, Cargill Incorporated ("Cargill") and CAN Technologies, Incorporated "(CAN").  Ex. B to Carpenter Declaration.  The Burford plaintiffs seek to represent a national class of dairy farmers who purchased Cargill's customized dairy feed pellets. *Id.*, ¶ 3.  They allege that the customized dairy pellets purchased from CAN led to various problems with their dairy cows, which subsequently caused monetary loss.[1]  The Burford case is still in the discovery phase.

A Protective Order was signed by the Court on September 19, 2006, that prohibits the use of confidential information disclosed by a party beyond the scope of Burford.  Carpenter Decl., Ex. D. Shortly after that order, Cargill produced more than 130,000 pages of documents to Payne and DeHaan. Carpenter Decl., ¶ 14.  The majority of these documents were marked "Confidential" or "Highly Confidential" under the terms of the Protective Order.  *Id.*  Burford counsel have not disputed Cargill's designation of these documents.  *Id.*

**C. Progressive defendants and Burford**

Currently pending before the Burford court is a motion regarding the confidentiality agreements signed by the Progressive defendants.  Specifically, the plaintiffs in Burford have moved for a protective

---

[1]Cargill Animal Nutrition ("CAN") is a part of Cargill which produces customized animal nutrition solutions, including the dairy pellets as issue in Burford v. Cargill,  Civil Action No. 05-0283 (W.D. La.) ("Burford").

order from the court "(1) declaring that any confidentiality agreements or nondisparagement clauses executed by the former employees of defendant shall not bar their testimony in this matter... [and] (2) prohibiting Cargill from taking any adverse action against Budine, Jonkman, Sundberg, DeGroff, and Schwegel for their testimony in this matter." Plaintiffs' Motion for Protective Order, <u>Burford</u> (May 9, 2007). Plaintiffs' motion for an order about the confidentiality agreements is centered entirely around the defendants in this case and their counterclaims. In that motion, it is asserted that "Plaintiffs' counsel have recently learned that five employees from the Pacific Coast Division of defendant Cargill terminated their employment...leading to a lawsuit being filed against them [describing the Progressive defendants and the action before this Court]." *Id.*, ¶ 2. Burford counsel then asserts that the Progressive defendants may be "fearful of giving testimony and other discovery assistance to plaintiffs" because of the "TRO in the California suit." *Id.*, ¶ 3. Plaintiffs include direct quotes from the complaint and answer in this action in support of their motion before the Louisiana Court. *Id.*, ¶¶ 5-7. Burford counsel then conclude that "the allegations of the Counterclaim in the California suit establish that the deposition testimony and information of these five former employees is highly relevant to the claims asserted in this class action lawsuit and would be helpful to [the Louisiana] Court in determining whether the experiences of the named Plaintiffs are typical of those of the entire class." *Id*, ¶ 8. Finally, Burford counsel prays that the Louisiana court declare "that any such confidentiality agreements and nondisparagement clauses [signed by Progressive defendants] are not legally enforceable to prevent the testimony of former employees....nor prevent them from conferring with [Burford] counsel." *Id.*, ¶ 10.

In this case, the Progressive defendants rely on <u>Burford</u> in their counterclaim against Cargill. See Answer, ¶¶ 18. Progressive defendants plead as facts in their counterclaim against Cargill the allegations by Burford against Cargill. Answer, ¶¶ 19-29.

**D.   Budine's Involvement with <u>Burford</u> while an executive with Cargill**

As previously noted, Budine was the District General Manager of CAN's Pacific Coast business. Cargill argues that because the Burford plaintiffs purport to represent a national class, the <u>Burford</u> action potentially affects CAN's dairy business throughout the United States, including the geographic area Budine managed. As a result, Cargill's legal team consistently involved both the U.S. district General Managers and the Dairy Vision Team in strategic discussions concerning <u>Burford</u>. Decl. Karen Gooch

4

("Gooch Decl."), ¶ 2; Carpenter Decl., ¶ 6. Cargill further contends that Cargill's in-house counsel has been in frequent contact with both the General Managers and members of the Dairy Vision team, including Budine in particular. Gooch Decl., ¶ 4-5. Such discussions included in-house counsel's assessment of the <u>Burford</u> case and its potential impact on Cargill. *Id*., ¶ 3. Cargill further contends that Cargill's outside counsel also worked closely with Budine. It is alleged that at least six privileged discussions occurred between outside counsel and Budine. Carpenter Decl., ¶ 7.[2]

One such discussion was a telephonic conference on July 12, 2006, which lasted 1.5 hours. Mark Carpenter ("Carpenter"), outside counsel for Cargill, contends that the subjects he discussed with Budine in that meeting were (1) a status report on and assessment of the <u>Burford</u> lawsuit and (2) a detailed dialogue about company and district policies with which counsel would need to be familiar to defend the <u>Burford</u> action. *Id*., ¶ 8; Declaration of Christian S. Walker,¶ 4. In response, Budine does not remember Mr. Carpenter being on that call at all. Budine further asserts that the substance of that call was to explain to Mr. Walker (another outside counsel for Cargill) "how the Pacific Coast District business was structured, how we focused on the customers and the health of their cows.... Mr. Walker did ask several questions about our interactions with customers and how we interacted with the with respect to generating feed formulations, sending those formulations off to Cargill...." Budine Decl., ¶ 20. Budine concludes that "nothing [Mr. Walker] asked me seemed to be anything confidential or secret about Cargill's operations, let alone something privileged regarding the Burford litigation." *Id.*

Mr. Rob Sheffer ("Sheffer"), General Manager of Cargill Animal Nutrition's Albany district also had a conversation with Mr. Carpenter on July 12, 2006. Declaration of Rob Sheffer ("Sheffer Decl."), ¶ 6. He understood that the legal team was having similar conversations with other U.S. general managers. That conversation was quite lengthy. In that meeting, all of his numerous questions about <u>Burford</u> were answered and "Mr. Carpenter and Ms. Gooch [Cargill lawyer and paralegal] provided an in-depth discussion of the Burford case, explained to me their understanding of the nature of the plaintiffs' claims, and shared their thoughts for an approach as to how Cargill might defeat the plaintiffs'

---

[2]Carpenter avers that none of the six contacts his firm had with Budine concerning the Burford case included any Cargill business employee other than Budine. Second Declaration of Carpenter, ¶2. Budine contends that he does not remember Carpenter and any contacts must occurred during conference calls with other General Managers, in which the attorney did not participate. Budine Decl. ¶

later motion for class certification." *Id.*   Sheffer "considered this conversation to be a privileged attorney-client communication." *Id.*

In August 2006, Cargill contends that outside counsel visited Budine in person to collect documents for Burford, identify additional sources of information, and again discuss policies that might bear upon Burford. Carpenter Decl., ¶ 9.  Budine recalls that at some point in the summer of 2006, he was "told by Cargill's management...that Cargill's lawyers on the <u>Burford</u> case would be visiting the Pacific Coast District to review and copy certain files we had in our facilities."  Budine Decl., ¶ 22. Budine contends that he met with the lawyers when they arrived, but that at no point did those lawyers explain what they were looking for or discuss strategy for the <u>Burford</u> litigation Budine Decl., ¶ 23-25. Budine further avers that he has no recollection of which documents and files were collected by Cargill's attorneys. *Id.*

Carpenter asserts that he engaged in at least three additional privileged discussions with Budine in late 2006, which led to the filing of an affidavit executed by Budine in December 2006 in the Burford 2006.  A copy of that affidavit is attached to Carpenter's Declaration as Exhibit C.  In that affidavit, Budine, General Manager for CAN at that time, discussed his involvement with negotiating a settlement with Sunnyside Dairy and the dairyman's eventual rejection of the proposed settlement. *Id.*  Budine responds that "no lawyer ever took the time to explain to me anything at all about how the information in that declaration might relate to the Burford action at the time I reviewed and signed it."  Budine Decl.,¶ 26. Carpenter disputes this contention, saying, "I would never work with an employee of a client on an affidavit or declaration without first discussing the connection between the affidavit and the matter at issue."  Second Carpenter Decl., 3.

Last week in <u>Burford</u>, plaintiffs(presumably through Burford counsel) filed a motion for leave to amend to add 38 new named plaintiffs in the proposed class action.  One of those proposed dairies is Sunnyside Dairy, that which is the subject of Budine's affidavit which he submitted in December 2006 in the <u>Burford</u> case.  Second Carp. Decl., ¶4.  Jonkman was the Dairy Specialist for Sunnyside Dairy. Further, Carpenter contends that in December 2006, he had two discussions with Budine about a second dairy proposed as a plaintiff. *Id.* Carpenter discussed this same dairy with Sundberg. *Id.*  Carpenter asserts that these discussions revolved around the dairy's potential role in <u>Burford.</u> *Id.*

6

In early January 2007, just weeks before Budine left Cargill, Carpenter engaged in at least one telephone conversation and one written communication with Budine that stemmed from Cargill counsel's desire to learn more about MAX and BILLS, Cargill's ration building and feed formulation programs. Carpenter Decl., ¶11. Budine explains Carpenter asked about the computer programs and that he referred Carpenter to Schwegel, who was familiar with those programs.  Budine Decl., ¶31.

Cargill further asserts that Budine's participation in the Dairy Vision Team gave him access to privileged information.  Budine asserts that the team never discussed anything of a confidential or proprietary nature.  Budine Decl., ¶11. Sheffer, until recently the chairperson of the Dairy Vision Team asserts that information at these meetings is considered confidential and not to be disseminated. Sheffer Decl.,¶ 3.  Sheffer further asserts that while Budine was still a member of the team, Cargill in-house lawyer Karin Nelsen and paralegal Karen Gooch participated in multiple discussions of Burford in Dairy Vision Team meetings and conference calls.  *Id*., ¶4.

In sum, Cargill contends that Budine had extensive access and involvement with privileged information by virtue of his position of General Manager and member of the Dairy Vision Team.  Budine counters that he had no access or involvement in any privileged communications with Cargill's attorneys.

Cargill identified Budine as a witness in its Responses to Interrogatories served on September 15, 2006 in the Burford case.

**E.    Burford Counsel**

Since 2003, DeHaan has prosecuted four other cases against CAN.  In each of those cases, DeHaan has executed on behalf of himself and his clients a confidentiality agreement to prevent him or his clients from revealing any "confidential trade secrets or propriety ration formulation computer programs.".  DeHaan Decl, ¶ 5.  DeHaan's first contact with the Progressive defendants was around March 1, 2007, when Sundberg called his Idaho office and inquired about the status of the class action lawsuit.  At that time, Sundberg advised DeHaan that the five employees who are defendants in this case left Cargill.  *Id*., ¶ 8.  On March 4, 2007, DeHaan met with the Progressive defendants in California. Declaration of Todd Schwegel ("Schwegel Decl."), ¶4.  Sundberg, Budine, and Jonkman told co-defendant Todd Schwegel ("Schwegel") that at that meeting, DeHaan wanted to be "part of the

7

1   complaint against Cargill.  They also said that they would use DeHaan as leverage against Cargill."

2   Schwegel Decl., ¶4.  DeHaan recommended two California attorneys to the Progressive defendants at

3   that time. DeHaan Decl., ¶ 9.

4       Ken Keller, counsel for Progressive defendants in the earliest stages of this litigation, arranged

5   a meeting between Progressive defendants and Burford counsel.  See Declarations of Keller, DeHaan,

6   Gregorio, and Payne.  Inexplicably, none of the declarations of the attorneys gives the date of this

7   meeting.

8       A second meeting was held at Mr. Keller's office.  *Id.*  At the beginning of that meeting, a letter

9   was executed and presented to Burford counsel, confirming that no documents or information subject

10  to the attorney-client privilege would be provided to the Burford counsel.  Declaration of Keller, Ex. B

11  (letter dated May 4, 2007).

12      On May 21, 2007, counsel for Plaintiffs sent a letter to Burford counsel requesting that they

13  withdraw from representation in the instant action.  In the letter, Plaintiffs state that Burford counsel's

14  representation of the Progressive defendants "creates significant concern regarding conflicts of interest

15  and potentially improper use of confidential information."  Pl. Mot. Disqualify, Ex. F.  Plaintiffs further

16  mention that "Mr. Budine had extensive involvement, with still a Cargill employee, in privileged and

17  strategic discussions assisting Cargill in its defense of the Burford action."  *Id.*  Plaintiffs also note that

18  "defendants allege in their counterclaim against Cargill that the facts underlying the Progressive case

19  are related to the Burford case, and vice versa."  *Id.*  Cargill outlines several concerns it has, concluding

20  that "it will be forced to take the appropriate actions to prevent further harm arising from the dual

21  representation."  *Id.*

22      On May 22, 2007, a Pro Hac Vice Order was signed to add Payne as counsel for the Progressive

23  Defendants.  (Doc. 79).  On the same day, Gregorio was admitted by Pro Hac Vice Order (Doc. 80).  On

24  May 25, 2007, DeHaan was added as counsel by Pro Hac Vice Order (Doc. 85).

25      Also on May 22, 2007, Payne responded to Cargill's letter.  In it, Payne declines to withdraw

26  from the case.  Payne further asserts that "You have already once before in this litigation made a baseless

27  charge against me of unethical behavior, only to withdraw the charge when we came before the Judge.

28  If you make such a baseless charge again, I will pursue all available sanctions."  Pl. Mot. Disqualify, Ex.

1  G.  This motion was raised the following day.

2

3                                    **III. ARGUMENTS**

4  **A.     Cargill's Arguments**

5          Cargill argues that Burford counsel's representation of Progressive defendants creates an

6  appearance of impropriety in violation of Canon 9 of the Model Rules of Professional Conduct and the

7  Court should use its inherent power to regulate the conduct of lawyers appearing before it to disqualify

8  Burford counsel.  Cargill further argues that Burford counsel's representation of Budine, until recently

9  a high-level Cargill manager with significant knowledge of Cargill privileged matters pertaining to

10  Burford, creates an appearance of impropriety, which undermines the public's confidence in the legal

11  profession and undermines the integrity of these judicial proceedings.  Third, Cargill argues that Burford

12  counsel's representation of Budine violates California Rule of Conduct 3-310(c)(1) because there is a

13  potential conflict of interest between the Burford plaintiffs and the Progressive defendants. Lastly,

14  Cargill contends that Burford counsel's dual role ensures that Cargill's confidential information will be

15  misused in violation of the Protective Order and Cargill's right to maintain the confidentiality of its

16  proprietary information.

17  **B.     Progressive defendant's arguments**

18          Progressive defendants do not have any material privileged information concerning the Burford

19  matter.  Most of the communications between Cargill's lawyers and defendants were simple requests

20  by the lawyers for information, either to answer discovery requests or to educate the lawyers on the way

21  Cargill does business.  Progressive defendants further argue that the communications with Budine were

22  simple statements to a group of employees that the litigation "is progressing" or "we are defending the

23  case."  Progressive defendants contend that ex parte contact with former employees of a party, even

24  management employees, is permitted and that the attorney-client privilege does not apply to all

25  statements by the employees of a corporation to its attorneys.  It does not protect disclosure of the

26  underlying facts which were communicated, as is the case here.  Furthermore, there is no presumption

27  of disclosure in this case.  Finally, Progressive defendants contend that there is no actual or apparent

28  impropriety in this matter, no violation of any Confidentiality Orders either have occurred or will occur,

                                            9

1   and there is no conflict of interest.  Nothing about Burford counsel's involvement will impugn the

2   integrity of the judicial process.  Disqualification of counsel is a drastic remedy, which interferes with

3   a party's right to his/her choice of counsel, and which further entails great expense to the litigant.  Cargill

4   only brings the instant action to harass defendants and granting this motion will chill defendant's ability

5   to choose freely their attorneys who will represent them on an affordable, contingency fee basis and

6   bring their expertise on Cargill.

7

8                                     **IV. DISCUSSION**

9   **A.      Standard of Review and Applicable Law**

10           **1. Generally**

11           "[T]he business of the court is to dispose of litigation and not to oversee the ethics of those that

12   practice before it unless the behavior taints the trial." *Continental Ins. Co. v. Superior Court*, 32 Cal.

13   App. 4th 94, 111 n.5 (1995).   In the matter before this Court, Plaintiffs argue that the continued

14   representation of the Progressive defendants by Burford counsel (1) gives rise to the appearance of

15   impropriety; (2) creates a conflict (or potential conflict) of interest; (3) violates confidentiality orders

16   and privileged information; and (4)assaults the integrity of these judicial proceedings.  In considering

17   these assertions of ethical violations, this Court is bound by Local Rule 83-180(e), which  reads in

18   pertinent part:

19           Every...attorney...shall comply with the Rules of Professional Conduct of the State Bar
             of California and decisions of any Court applicable thereto, which are hereby adopted as
20           standards of conduct in the Court.  In the absence of applicable standards therein, the
             Model Code of Professional Responsibility of the American Bar Association may be
21           considered guidance.  No attorney admitted to practice before this Court shall engage in
             conduct that degrades or impugns the integrity of the Court or in any manner interferes
22           with the administration of justice.

23   From this rule, three points are clear.  First, this Court shall hold attorneys before it to the standards as

24   set out by the California Rules of Professional Conduct.[3]  Second, in the absence of applicable California

25   standards, the Court may use the Model Code of Professional Responsibility as guidance.  Finally, this

26

27   _____

28           [3]The California Rule of Professional Conduct provides  that "[e]thics opinions and rules and standards promulgated
     by other districts and bar associations and bar associations may also be considered."  Cal. R. Prof. Cond. 1-100(A).

                                              10

1   Court must protect the integrity of the Court and the fair administration of justice.

2          This Court's authority to disqualify an attorney arises from the Court's inherent power to

3   preserve the integrity of the adversarial process. *Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991);

4   *Erickson v. Newmar Corp*., 87 F.3d 298, 300 (9th Cir. 1996).   In California, a "common theme" among

5   disqualification cases have been noted as follows:   "If the status or misconduct which is urged as a

6   ground for disqualification will have a continuing effect on the judicial proceedings which are before

7   the court, it is justified in refusing to permit the lawyer to participate in such proceedings...If, on the

8   other hand, the court's purpose is to punish a transgression which has no substantial continuing effect

9   on the judicial proceedings to occur in the future" disqualification is improper. *Chronometrics*, *Inc. v.*

10  *Sysgen, Inc.*, 110 Cal. App. 3d 597, 607.

11         In *Gas-A-Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir 1976), *cert. denied sub nom.*

12  *Shell Oil Co. v. Gas-A-Tron of Ariz*., 429 U.S. 861, 97 S.Ct. 164 (1976), the Ninth Circuit stated:

13          Whenever an allegation is made that an attorney has violated his moral and ethical
        responsibility, an important question of professional ethics is raised.  It is the duty of the
14      district court to examine the charge, since it is that court which is authorized to supervise
        the conduct of the members of its bar.  The courts, as well as the bar, have a
15      responsibility to maintain public confidence in the legal profession.  This means that a
        court may disqualify an attorney for not only acting improperly but also for failing to
16      avoid the appearance of impropriety.

17  *Gas-A-Tron*, 534 F.2d 1322, 1324-25 (quoting *Richardson v. Hamilton Int'l Corp*., 469 F.2d 1382, 1385-

18  86 (3rd Cir. 1972), *cert. denied*, 411 U.S. 986, 93 S. Ct. 2271 (1973) (quoted in *Erickson v. Newmar*

19  *Corp*., 87 F.3d 298, 303 (9th Cir. 1996); see also *Terrebonne Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1054

20  (E.D. Cal. 1998) (quoting the passage above).  Therefore, this Court shall examine the charges set forth

21  to determine whether there has been improper conduct, an appearance of impropriety, or other conduct

22  which "degrades or impugns the integrity of the Court or in any manner interferes with the

23  administration of justice." L.R. 83-180(e).

24         The parties dispute whether this Court can apply Model Code of Professional Conduct ("Model

25  Code) Canon 9, or whether California standards apply..  The parties further dispute whether the Ninth

26  Circuit Court of Appeals recognizes the disqualification of an attorney based solely on Model Canon 9.

27   Finally, the parties dispute whether there is an appearance of  impropriety .

28

11

**2.      California Rule of Professional Conduct 2-100 Inapplicable**

Progressive defendants frame their opposition by citing California cases which hold that <u>ex parte</u> communications with former employees not represented by counsel is not a violation of California's ethical rules.  See Opp. 10-12, *discussing* Cal. R. Prof. Con. 2-100(B).  The situation which confronts the Court presently, however, is something quite different and distinguished on two accounts.  First, California courts have only held that <u>ex parte</u> communications with former employees are allowable only for *unprivileged* information. See Weil & Brown, <u>California Practice Guide, Civil Procedure Before Trial</u> 1 (The Rutter Group), ¶ 1:471.42 (2006)(citing State Farm Fire & Cas. Co. v. Sup. Ct. (Taylor) (1997) 54 Cal. App. 4th 625, 638 (1997).[4]  As one court noted:

> The knowledge these witnesses have of matters protected by the attorney-client privilege, [and] trade secret agreements ...is so intermingled with knowledge that may be unprotected that the court cannot be assured [defense counsel] or the former employees will be able to segregate out only those matters that may be disclosed.  The danger of disclosure of protected information is substantial.  There is no sure way of guarding against disclosure if the employees are permitted to work for defendant on this litigation....No matter how well-intentioned counsel and the witnesses may be, the potential for abuse and mischief is great.

*In Re Date Gen Corp. Antitrust Litigation*, 5 Fed. R. Serv. 3d (Callaghan) 510, 9-10 (1986). "The federal courts must be in control of their own proceedings and of the parties before them, and it is almost apodictic that federal sanction law is the body of law to be considered in that regard." *Galam v. Carmel* (In re Larry's Apt., L.L.C.), 249 F.3d 832, 838 (9th Cir. 2001).

Secondly, Burford counsel are not engaging in <u>ex parte</u> communications with former employees in order to gain access to unprivileged information.  Rather, they have entered into an attorney-client relationship with the former employees.  The very nature of that relationship is such that confidences should be exchanged freely between attorney and client.  So important is this feature of the relationship, that it gives rise to duties of loyalty and confidentiality.  By virtue of this relationship, privileged and confidential information is presumed to be exchanged.  Thus, this rule is distinguishable and inapplicable to the case at bar.

**3.      California Rule of Professional Conduct 3-310(C)(1) and (E)**

---

[4]Citing to the Rutter Group, Progressive defendant, while citing  to a non-existent chapter, left off the last two essential  words (unprivileged events).

1    Cargill argues that Burford counsel are may be violating Cal. R. Prof. Conduct 3-310(C)(1)

2    which holds: "A member shall not, without the informed written consent of each client [a]ccept

3    representation of more than one client in a matter in which the interests of the clients potentially

4    conflict." While a conflict of interest may arise between the Burford plaintiffs and the Progressive

5    defendants, Cargill does not have standing to assert interests on behalf of either party. Further,

6    Progressive defendants have mention in their declarations that if a conflict arises, Burford counsel will

7    continue representation of Burford plaintiffs only. Thus, this potential has been discussed between those

8    parties and Progressive defendants have shown their understanding of this issue and their consent.

9    Similarly, Cargill reliance on cases which cite Cal. R. Prof. Conduct 3-310(E) is misplaced.

10    That rule states: "A member shall not, without the informed consent of the client or former client, accept

11    employment adverse to the client or former client where, by reason of the representation of the client or

12    former client, the member has obtained confidential information material to the employment." Burford

13    counsel have never represented Cargill. Cargill can not be identified as either a client or former client.

14    Therefore, this rule can not apply.

15    In its argument, Cargill attempts to impute the ethical responsibility of an attorney, under Cal.

16    R. Prof'l Conduct 3-310(E), to the Progressive defendants. In opposition, the Progressive defendants

17    argue that the cases upon which Cargill relies expand this rule to "include paralegals, legal secretaries,

18    and others who work as agents of lawyers, when they were hired by opponents....However, the cases

19    involving non-lawyer support staff diverged over whether the presumption of receipt and disclosure of

20    privileged information was rebuttable or not." Opp., 11:15-18. In order to support this proposition, the

21    Progressive defendants cite *Shandralina G. v. Homonchuk*, 147 Cal. App. 4th 395, 408 (2007). That case

22    offers this Court guidance on two principles:

23    > Similar concerns arise when a nonlawyer employee of the client's attorney, who obtained
> confidential information while working for the client's attorney, is later hired by a new
24    > attorney, who then undertakes a representation adverse to that client to which the
> confidential information would be material. (In re Complex Asbestos Litigation (1991)
25    > 232 Cal. App. 3d 572, 587588 [283 Cal. Rptr. 732] (Complex Asbestos).) In this context,
> after it is shown the nonlawyer employee actually obtained confidential information from
26    > the former client, the court will presume such information was imparted to the new
> attorney. Accordingly, the new attorney will be disqualified unless the attorney shows the
27    > employee has been adequately screened from involvement in the matter so the
> confidential information in the employee's possession was not and will not be used or
28    > disclosed to the attorney. Id. at pp. 592-596.)

...

> The disqualification principles have also been extended to permit disqualification of an attorney who obtained information protected by the attorney work product privilege. (See *County of Los Angeles v. Superior Court* (1990) 222 Cal. App. 3d 647, 657659 [271 Cal. Rptr. 698].) When an attorney consults with an expert and obtains confidential information protected by the work product privilege, and the opposing attorney later acquires the privileged information during communications with that expert, the opposing attorney can be disqualified because, "[h]aving become privy to [the attorney's] work product, there is no way the offending attorney could separate that knowledge from his or her preparation of the case." (Id. at pp. 657-658.)

The confidentiality concerns raised in both of these scenarios are similar to the confidentiality scenarios raised in this case  by virtue of the confidentiality agreements, repeated and lengthy discussions between Budine and Cargill counsel about <u>Burford,</u> all three Progressive defendants' participation in the delivery of documents to Cargill counsel in association with <u>Burford</u>, the material divulged by Cargill to the Burford counsel under the Protective Order in <u>Burford</u>, and the confidentiality agreements between Cargill and the Progressive defendants, and the nature of this action–which is to protect trade secrets. This will be discussed more fully below.

**4. Canon 9 as basis for disqualification**

With no California rules directly on point, this Court may look to the Model Code.  Canon 9 of the Model Code holds that a "lawyer should avoid even the appearance of professional impropriety." The Ninth Circuit has considered and decided that Canon 9 alone is a sufficient ground for disqualification.

> The first issue the court must decide is whether Canon 9 alone can be the basis for a disqualification motion.  Strong policy reasons support an affirmative answer.  The court is instructed to safeguard the integrity of the judicial process in the eyes of the public....Moreover, Local Rule 1.3(d) of the Central District of California provides that: '...No attorney admitted to practice before this Court shall engaged in any conduct which degrades or impugns the integrity of the Court or...interferes with the administration of justice therein.'  In addition, Local Rule 1.3(d) refers attorneys appearing before the District Court of the Central District of California to the Code of Professional Responsibility as well as the California State Bar Act.  If Canon 9 were not separately enforceable, it would be stripped of its meaning and significance...After carefully reviewing the policy considerations on both sides, we hold Canon 9 alone can be the basis for a disqualification motion.

*In re Coordinated Proc. Petroleum Products Antitrust Lit*., 658 F.2d 1355, 1360 (9th Cir. 1981), *cert. denied*, 455 U.S. 990 (1982).  Here, all of the same considerations are present.  The local rule of the Eastern District of California is identical to that quoted.  Further, our local rule refers attorneys to the

Model Code. The Progressive defendants argue that the application of Canon 9 is no longer valid, citing *In re McKinney Ranch Associates*, 62 B.R. 249 n.12 (Bkrtcy. C.D. Cal. 1986). This case, however, discusses how the Model Code is no longer in force in that district; yet, the Model Code is still in force in the Eastern District. Even in a district where the local rules no longer cite to the Model Code, the Ninth Circuit recently ruled:

> Although the ABA Code has been replaced by the ABA Rules of Professional Conduct, which expressly eliminates the 'appearance of impropriety' standard, and although California has neither adopted the ABA Code or Rules nor has its own such standard, the Code and case law illustrates that federal courts have the inherent power to apply it.

*In re AFI Holding, Inc.*, 355 B. R. 139, 153 n.15 (B.A.P. 9th Cir. 2006) (internal citations omitted). Therefore, this Court may use Canon 9 of the Model Code as a basis for qualification in this case.

## B.    Appearance of Impropriety

### 1.  Danger of Dissemination of Privileged and Confidential Information

It is the duty of this Court, to "guard against the inadvertent use of confidential information." *Ceramco*, 510 F.2d 268, 271. Progressive defendants assert that they were not privy to any privileged information. This assertion is undermined by Budine's high position in Cargill and his repeated interaction and discussions with Cargill's counsel in defense of Burford. This gives rise to, at the very least, a presumption that Budine participated in privileged communications.[5] See *Elliot v. McFarland Unified School Dist.*, 165 Cal. App. 3d 562, 568-69. The subject of those conversations between Budine and Carpenter, as well as Cargill in-house counsel, was in connection to Cargill's preparation for and defense of the Burford case before the Louisiana court. Here, Budine was General Manager of CAN, a high-level manager in control of the group charged with producing the dairy feed at issue in Burford. While his area was not originally the subject of the dispute, the plaintiffs in Burford have sought class certification, and include at least two dairyman from Budine's area. Budine included an

---

[5] Budine disputes whether the communications between the Cargill's counsel and Budine were the subject of privileged attorney-client privilege. This Court will not, however, further investigate the substance of these conversations. "[T]o require a client to show the nature of the confidential information would tear aside the protective cloak drawn about the lawyer-client relationship. For the Court to probe further and sift the confidences in fact revealed would require the disclosure of the very matters intended to be protected by the rule." *Rosenfeld Constr. Co. v. Superior Court*, 235 Cal. App. 3d 566, 573-74 (1991). Instead, a presumption arises that Budine did impart confidential information. *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037, 1043.

affidavit to that effect in support of Cargill's defense in <u>Burford</u>.  Cargill further named Budine as a witness in support of Cargill's defense in <u>Burford</u>.  Any conversations between Budine and Cargill counsel would have been protected by the attorney-client privilege, as they related to the preparation of Cargill's defense in <u>Burford</u>.  This Court has evidence of at least six conversations to that effect.

Further, the Court is not persuaded by Progressive plaintiffs' and Burford counsel's proffered arrangement that, while there is no confidential information,  Progressive plaintiffs will not relay any confidential information and Burford counsel will shield themselves from any privileged or confidential information.  Statements from counsel or former employees to the effect that they "attempted to preserve any attorney-client privilege of the [former employer] while undoubtedly true, are unavailing. *Packard Bell v. NEC v. Aztech Systems Ltd.*, 2001 U.S. Dist. LEXIS 11194 (C.D. Cal. 2001) at *23.  Further, "the Court's concern that privileged and confidential information was indeed disclosed and discussed, is not assuaged by [counsel's] assertions to the contrary." *Arnold v. Cargill Inc.*, 2004 WL 2203410 (D. Minn. 2004).  Given their "undeniable interest in preserving any tactical advantage they may have garnered," these assertions are unavailing. *MMR/Wallace Power & Industrial Inc. v. Thames Assoc.*, 764 F. Supp. 712, 726-27 (D. Conn. 1991); see also *Cordy v. Sherwin-WIlliams Co.*, 156 F.D.R. 575, 584 (D. N.J. 1994) ("Self-serving affidavits of counsel and others are not helpful because of their undeniable interest in preserving any tactical advantage they may have garnered); *Biocore Med. Tech., Inc.*, 181 F.R.D. 660, 675 (D. Kan. 1998) ("Self-serving protestations [of counsel] do not help assuage the fears of...the Court that [the former employee] indeed revealed confidential information."), *aff'd*, 348 F.3d 1163 (10th Cir. 2003).

Moreover, such proposed arrangement puts the Progressive defendants in the sole position of determining what is confidential and privileged.  Courts have previously refused to allow the former employee to make this decision.  See *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913 (D. Nev. 2006).  Indeed, the Progressive defendants in their answer as well as in their memoranda have already made clear to the Court their position that Cargill does not have "any genuine trade secrets regarding the formulations of dairy feed." Mem. Opp., 5.  Furthermore, Cargill points out that in his declaration offered for this motion, Budine freely reveals what is considered privileged information at paragraphs 20, 31, and 33.  While this information is far from sensitive, it underscores the reality that the

Progressive defendants are parties in an adverse proceeding, and therefore not in a position to make a legal finding as they propose to do.

Finally, all Progressive defendants signed confidentiality agreements with Cargill.[6]  While this Court makes no ruling one way or the other on this issue, Cargill alleges that the Progressive defendants have previously breached those confidentiality agreements.  Complaint, ¶¶ 86-97.  Agreements of this type, attached to the complaint, are generally recognized in California.  Currently, and until this Court makes a finding to the contrary, the agreements are in full force and effect.

### 2. Prejudice to Adversaries

"The courts have not only the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct prejudicial to his adversaries." *Chronometrics, Inc. v. Sysgen, Inc*., 110 Cal. App. 3d 597, 604 (1980) (discussing and quoting *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 270-71 (2d Cir. 1975).  Cargill argues that Burford counsel will gain an unfair advantage in this litigation by gaining access to privileged and confidential information not normally available to them through normal discovery means and using it against Cargill.  Cargill argues that Burford counsel gained access to 120,000 documents through the <u>Burford</u> litigation through the Protective Order, the majority of which was designated "Confidential" or "Highly Confidential," which is relevant to this case and which may be improperly used against them.

Burford attorneys have access to confidential and highly confidential information obtained through Burford which they may have been barred from accessing in this case, but may nevertheless be helpful.  In this case, the trade secrets at issue are the feed formulations generated through specialized computer software.  Cargill claims that the Progressive defendants misappropriated these trade secrets.  In connection with <u>Burford</u>, Burford counsel received 120,000 documents from  Cargill covered in the Protective order, including feed formulations and other "Confidential" and "Highly Confidential" documents.  This is exactly the type of information Cargill seeks to keep out of the hands of the Progressive defendants and the information at issue in this case. "Where it can be reasonably said that

---

[6]Cargill entered into an "Employee Confidential Information and Invention" Agreement with Budine and an "Employee Confidential Information, Invention, and Original Works of Authorship Agreement" with Sundberg and Jonkman. Complaint, ¶¶87-88.

in the course of the former representation the attorney might have acquired information related to the subject matter of his subsequent representation, it is the court's duty to order the attorney disqualified. The breach of confidence would not have to be proved; it is presumed in order to preserve the spirit of Code [of Professional Conduct, Canon 9]." *Hull v. Celanese Corp*, 513 F.2d 568, 572 (2d Cir. 1975) (internal citations omitted). Further, "[c]ase law interpreting what is 'confidential information' initially asks whether the former representation is substantially related to the current representation. Where the substantial relationship exists, especially where the relationship is such that confidential information normally would have been imparted to the attorney, a 'rule of necessity' causes a presumption of conflict." *Elliott v. McFarland Unified School Dist.*, 165 Cal. App. 3d 562, 568-69

### 3.    Danger of Continuing Adverse Effect

Because of the association of Burford counsel and the Progressive defendants in both this and the Burford litigation, the dangers of a detrimental continuing effect on this litigation are great.  Burford counsel seek a ruling from the Louisiana court that the confidentiality agreements signed between the Progressive defendants and Cargill should not be deemed legally enforceable, so that the Progressive defendants can confer with Burford counsel in that case.  Those confidentiality agreements are at issue before this Court in a claim by Cargill against the Progressive defendants.  This motion alone shows how the association between Burford counsel and the Progressive defendants creates an atmosphere that is unwieldy for the instant litigation.

Moreover, Cargill argues that the attorney-client relationship that presently exists between the Burford counsel and the Progressive defendants insures that, when Cargill deposes Budine, Sundberg, and Jonkman in connection with Burford, it will not be able to learn about the extent of any "improper exchange of information because the attorney-client privilege will be invoked to block such questions. In this fashion, Burford counsel has effectively foreclosed any feasible means of inquiry into its actions." Pl. Reply, 10.  This is only one situation of many situations in which the judicial process may become muddled because of this relationship.

As the court noted in *Chronometrics,* 110 Cal. App. 3d 597, 607, "[S]uch information as [the attorney] may have learned...cannot be unlearned...As counsel, [the attorney] would have the improperly obtained facts instantly available in his mind in questioning witnesses, making and responding to

18

objections and addressing the court and jury."

///

### 4.       Similar Cases Have Resulted in Disqualification

Cargill offers similar cases in which a court properly disqualified counsel.  In *Packard Bell*, *supra*, 2001 U.S. Dist. LEXIS 11194, the Central District of California relied on Canon 9 and California Rule of Professional Conduct 3-310(c)(1) to disqualify counsel on facts strikingly similar to those here. In seeking qualification, Packard Bell alleged that because of the law firm's concurrent representation of the party opposing it in another litigation with a former Packard Bell employee, the attorney was "likely to obtain confidential information that it could not lawfully obtain in discovery." *Id.* at *14.  As stated by the court, "it is the potential for disclosure of confidential information in light of the status of the [lawyer representing both plaintiff and former employee defendant] which is the concern. *Id* at *23. Under similar facts, the former employee's responsibilities included supervision and direction of the business that was the subject of the other litigation, which led that former employee to have discussion with Packard Bell counsel about litigation strategy.  In disqualifying the law firm, the court reasoned that while privileged and confidential information "cannot be unlearned, and the lawyer who obtained the information cannot be prevented from giving it to others, disqualification still serves the useful purpose of eliminating from the case the attorney who could most effectively exploit the unfair advantage." *Id* at *25.

In *Williams v. Trans World Airlines, Inc.*, 588 F. Supp. 1037 (W.D. Mo. 1984), counsel was disqualified in a discrimination action against TWA, because counsel concurrently represented a former employee of TWA who had access to confidential information while employed at TWA.  Progressive defendants seek to distinguish this case, because the former employee participated extensively in the preparation of the litigation of Williams.  Here, Progressive defendants have also had contacts with counsel, and even prepared affidavits in relation to proposed members of the Burford plaintiff class. Thus, the evidence strongly suggests the Progressive defendants did help prepare in that litigation. Further, they have all signed confidentiality agreements with Cargill.  In <u>Williams</u>, despite the fact that the former TWA employee had not signed a confidentiality agreement, stated that she had no specific recollection of the Williams action, and had no confidential documents in her possession, the Court held

the fairness and integrity of the judicial process and TWA's legitimate interest in a trial free from the risk that confidential information has been unfairly used against it outweighs plaintiffs' interest in being represented by this particular law firm.  To refuse to disqualify [plaintiff's counsel] would leave an appearance of impropriety hanging over these cases which would taint the proceedings. *Id*. at 1040, 1046.

## C.  Disqualification Proper

In the instant case, there is divergence from the more usual situation of the lawyer who switches sides to represent an interest adverse to a former client.  Instead, we have a former executive whose work was the subject of a substantially related case and who participated in preparation of defense in that case, who switched sides to assist plaintiffs in that case, and further entered into a separate lawsuit against the former employer.  In spite of this, Burford counsel seeks to represent both the Burford plaintiffs and Progressive defendants.

It is undisputed that the Progressive defendant's right to counsel of their choice is important. However, in similar situations, that right has yielded to considerations of ethics and the integrity of the judicial process. See *Hull v. Celanese Corp*., 513 F.2d 568 (2d Cir. 1975).  The "potential for unfair discovery of information through private consultation rather than through normal discovery procedures threatens the integrity of the trial process." *Williams,* 588 F. Supp. 1037, 1045 (citing *NKC Org. Ltd. v. Bregman*, 542 F.2d 128, 132 (2d Cir. 1976) (holding that Appellant's interest must yield in the balance and doubts be resolved in favor of disqualification for the adequate protection of these other interests under Canon 9 of the Model Code).  The Court generally will defer to a party's choice of counsel. In this case, however, the policy concerns raised by participation of Burford counsel outweigh this right; namely, the appearance of impropriety and the threat to the integrity of the trial process, because of the confidential and privileged information involved, and the risk of unfair advantage.  The arrangement impugns the integrity of these judicial proceedings, the integrity of this Court, and the administration of justice.  The Progressive defendants describe their interest in keeping Burford counsel as their expertise in Cargill cases and Burford counsel's willingness to work on a contingency fee basis.  These interests do not excuse or explain away the conflict that exists.

1

2                                        **V.  Conclusion**

3          For the foregoing reasons, this Court ORDERS:

4          I.       Plaintiffs' motion for disqualification of Burford counsel is GRANTED; and

5          II.      The hearing currently set for June 27, 2007 is VACATED.

6

7   IT IS SO ORDERED.

8   **Dated:    June 22, 2007**                    /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28