IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARGILL INCORPORATED and<br>CAN TECHNOLOGIES,<br><br>                              Plaintiffs,<br><br>   vs.<br><br>MATTHEW BUDINE, *et al.*,<br>                              Defendants.<br>_____/<br>MATTHEW BUDINE, PROGRESSIVE<br> DAIRY SOLUTIONS, LUCIANA<br>JONKMAN, and BRIAN SUNDBERG,<br><br>                    Counter-claimants,<br><br>   vs.<br><br>CARGILL INCORPORATED and<br>CAN TECHNOLOGIES,<br><br>                    Counter-defendants.<br>_____/ | CASE NO. CV-F-07-349- LJO-SMS<br><br>**ORDER ON CARGILL'S MOTION TO DISMISS COUNTS 4-8, 19 OF PROGRESSIVE'S SECOND AMENDED COUNTERCLAIM**_____ |

**I. INTRODUCTION**

Plaintiffs-Counter-defendants Cargill Incorporated ("Cargill, Inc.") and CAN Technologies, Inc. ("CAN") (collectively "Cargill") move to dismiss certain counterclaims raised by Defendants-Counter-claimants Progressive Dairy Solutions, Inc., Matthew Budine, Luciana Jonkman, and Brian Sundberg (collectively "Progressive"). In its Second Amended Counterclaim ("SACC"), Progressive alleges, *inter*

*alia*, that Cargill violated antitrust laws by tying products (counts 4-6), attempted to monopolize (count 7), violated California's unfair trade practices laws (count 8), and committed civil conspiracy (count 19). Cargill moved to dismiss counts 4-8 and 19 pursuant to Fed. R. Civ. P. 12(b)(6). Progressive opposes Cargill's motion to dismiss. For the reasons discussed below, Cargill's motion to dismiss is denied in full.[1]

## II. BACKGROUND

Progressive consults dairy farmers throughout the United States to create custom feed formulations designed to maximize overall animal health, milk production, reproduction and growth.[2] Progressive does not manufacture feed. Rather, it bids out its feed formulations to feed manufacturers for production. Cargill, Inc. is a manufacturer of formulated feed for dairy herds. Progressive allows customers to bid out Progressive dairy feed formulations to one or more feed manufacturers, including Cargill, Inc. Like Progressive, CAN provides dairy feed formulation services to customers who buy Cargill's feed.[3] Defendants Budine, Jonkman, and Sundberg performed feed formulation services while employed at CAN. They now perform these services at Progressive.

Blood meal is the pasturized, dried, and powdered blood of animals. Feed nutrition consultants, including employees at Progressive and CAN, specify the inclusion of beef blood meal in feed formulations as a cost-effective source of protein. In its SACC, Progressive claims, *inter alia*, that Cargill "purchased enough of the beef blood supply to obtain appreciable economic power and/or market power" and "that [Cargill is] able to appreciably restrain free competition in the market for nutritional consulting services."

Progressive alleges that Cargill conditions the manufacture and sale of beef blood meal feed to the use of its nutritional consulting services by either refusing to manufacture beef blood meal feed

---

[1] As an initial matter, the Court notes that in this motion, both parties mis-characterize the pleadings and arguments, and misstate the law. The Court admonishes the parties that no future arguments of this nature will be considered. See, e.g., Cargill's Motion, 12:9-15; 13:14-15; *in passim* (applying summary judgment standards to this Fed. R. Civ. P. 12(b)(6) motion; Progressive's Opposition, 5:5-6; 15:4-6; 17:6-14;18:2-3.

[2] The facts are taken from the Second Amended Counterclaim ("SACC"), unless otherwise noted, and will be accepted as true in this motion. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969)

[3] The relationship between Cargill, Inc. and CAN is discussed more fully below in Section III E.

pursuant to formulations prepared by feed nutrition consultants other than CAN, or by charging unreasonably high prices for feed manufactured according to formulations prepared by feed nutrition consultants other than CAN. Progressive further alleges that "by virtue of [its] appreciable economic power and/or market power...[Cargill, Inc. has] increased the cost of beef blood meal to the point that other feed manufacturers are effectively prevented from manufacturing feed pursuant to formulas requiring the use of beef blood meal." As a result, Progressive claims that competitors in the feed nutrition consulting market are placed at a "competitive disadvantage" because dairy farmers are "coerced into seeking and using [CAN's] beef blood meal formulations because it is the only way beef blood meal feed can be manufactured at a reasonable price." Progressive concludes that Cargill's "tying of beef blood feed to their nutrition consulting services constitutes predatory and anticompetitive conduct" and Cargill has a dangerous probability of success in achieving monopoly power in the relevant market. As a result of Cargill's alleged conduct, Progressive claims that it has lost clients, business from clients, and market share.

Progressive originally filed its counterclaim against Cargill on April 16, 2007. On July 10, 2007, Progressive filed an amended answer and counterclaim against Cargill. Cargill moved for a partial dismissal of Progressive's first amended counterclaims on July 27, 2007. This Court granted Cargill's motion to dismiss with leave to amend on August 30, 2007. On September 18, 2007, Progressive filed its SACC.

Cargill filed the instant motion to dismiss on October 5, 2007. Cargill seeks to dismiss Progressive's tying counterclaims (counts 4-6); attempted monopolization counterclaim (count 7); unfair trade practice counterclaim (count 8); and civil conspiracy counterclaim (count 19). Progressive filed an opposition to the motion to dismiss on October 22, 2007. Cargill filed a reply on October 29, 2007. The Court considered these documents, vacated the November 5, 2007 hearing pursuant to Local Rule 78-230(h), and issues the following order.[4]

///

---

[4] This Court carefully reviewed and considered all arguments and points and authorities. Omission of reference to an argument, document, paper or objection is not to be construed to the effect that this Court did not consider the argument or objection. This Court thoroughly reviewed and considered the arguments and objections it deemed appropriate for this motion to dismiss.

### III. ANALYSIS

**A.      Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In considering a motion to dismiss for failure to state a claim, the court must accept as true the allegations of the complaint in question, construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969); *Hospital Bldg. Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 740 (1976).

Although courts assume the facts alleged as true, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). In the antitrust setting, the Supreme Court announced that "the need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id*. at 1966.

**B.      Section One of Sherman Act[5]**

Private suits to enforce the Sherman Act are authorized by Section 4 of the Clayton Act, 15 U.S.C. §15(a), which provides that "any person who shall be injured in his business...by reason of anything forbidden in the antitrust laws may sue..." *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 987 (9th Cir. 2000). In counts 4-6, Progressive alleges that Cargill violated Section One of the Sherman Act, 15 U.S.C. §1, for conspiring to tie (count 4), attempting to tie (count 5) and tying (count 6) (collectively "tying claims") by conditioning the sale of beef blood meal feed on the use of Cargill's feed nutrition

---

[5] Counts 4-6 of the SACC allege Cargill violated both the Sherman Act and California's Cartwright Act. The parties argued about whether the current motion to dismiss also applied to the California law claims. Because the Court denies Cargill's motion to dismiss on the Sherman Act arguments, it does not reach this question.

consulting service.

### 1. Concerted Action

Under Section One of the Sherman Act, any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce" is illegal. To plead an antitrust claim under Section One of the Sherman Act, a claimant must show the existence of either "an agreement, conspiracy or combination among two or more persons or distinct business entities." *Cent. Valley Chrysler-Jeep v. Witherspoon,* 456 F. Supp. 2d 1160, 1186 (E.D. Cal. 2006) (citing *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 811 (9th Cir. 1988)). Thus, Section One of the Sherman Act requires "concerted action" in the form of a contract, combination or conspiracy in restraint of trade. *See Systemcare, Inc. v. Wang Lab. Corp.*, 117 F.3d 1137, 1139 (10th Cir. 1997).

Cargill argues that Progressive's tying claims must be dismissed, because Progressive cannot satisfy the concerted action requirement. In its SACC, Progressive alleges that CAN is a division of Cargill. Cargill contends that Progressive is precluded from asserting a Section One claim, because when a parent and its wholly owned subsidiary collaborate with each other, it "must be viewed as that of a single enterprise for the purposes of Section One of the Sherman Act" and "there is no justification for Section One scrutiny." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 771 (1984). Cargill argues that counts 4-6 should be dismissed, because Progressive failed to "plead that [Cargill] entered into an illegal agreement with another distinct business entity to restrain trade." *Microsoft Corp. v. BEC Computer Co.*, Inc., 818 F. Supp. 1313, 1317 (E.D. Cal. 1992) (citing *Supermarket of Homes, Inc. v. San Fernando Valley Bd. Of Realtors*, 786 F.2d 1400, 1405 (9th Cir. 1986)).

Progressive contends that its tying claims are proper, because it pleaded that Cargill entered into tying contracts with its customers to satisfy the concerted action requirement of Section One of the Sherman Act. For its position, Progressive relies on *Systemcare, Inc. v. Wang Laboratories Corp.*, 117 F.3d 1137 (10th Cir. 1997), which held that "a contract between a buyer and a seller satisfies the concerted action element of section 1 of the Sherman Act where the seller coerces a buyer's acquiescence in a tying arrangement imposed by the seller." *Id.* at 1142; *see also, Toscano v. PGA Tour, Inc.*, 70 F. Supp. 2d 1109 (E.D. Cal. 1999) (citing *Systemcare* with approval). This Court finds that the agreement between Cargill and its customers satisfies the concerted action requirement of Section One of the

Sherman Act and that Progressive alleged such an agreement in the SACC. Accordingly, Cargill's motion to dismiss counts 4-6 will not be dismissed on this basis.

### 2. Tying--*Per se* and Rule of Reason

Cargill next argues that the tying counts should be dismissed, because Progressive failed to state a claim for tying. A trying arrangement is "an agreement by a party to sell one product on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 461 (1992) (quoting *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958). To state a claim for *per se* tying under the Sherman Act, Progressive must allege that: (1) Cargill's "scheme involves two separate products and conditions the purchase of the tying product on the purchase of the tied product;" (2) Cargill had "economic power in the tying market to restrain competition in the tied product market;" and (3) Cargill affected a "not insubstantial amount of commerce" in the tied market. *Cal. Glazed Prods., Inc. v Burns & Russell Co.*, 708 F.2d 1423, 1427 (9th Cir. 1983). Cargill contends that Progressive insufficiently pleaded each *per se* tying element.

Progressive's response is three-fold. First, Progressive argues that it has properly pleaded the elements of tying. *See* SACC ¶¶ 48, 49, 99, 103, 106 (tied products); 45, 46, 50, 51, 52, 99, 103, 106 (market power); and 53, 54, 99, 103, 106 (effect on commerce). Second, Progressive argues that its pleading has satisfied the Fed. R. Civ. P. 8(a) short and plain statement requirement and it should not be held to a heightened pleading standard. Third, Progressive argues that even if it has failed to state a claim for *per se* tying claim, it has properly pleaded tying under the "rule of reason."

Progressive pleaded properly the elements of *per se* tying in the SACC. *See* SACC*, supra*. Cargill challenges the elements of coercion, market power and effect on commerce, which are questions of fact that require discovery and a fact-finder to resolve. *See Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451 (no bright-line test for coercion in tied products); *U.S. Steel Corp. v. Fortner Enterprises, Inc.*, 429 U.S. 610, 620 (1977) (The question in evaluating market power is "whether the seller has the power, within the market for the tying product, to raise prices or require purchasers to accept burdensome terms that could not be exacted in a completely competitive market."); *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991) (rule of reason requires the fact-finder to examine the anti-competitive effects

of the defendant's challenged practice to determine whether the practice is unreasonable). Although an antitrust action, Progressive is only required to plead a short and plain statement of its allegations. Fed. R. Civ. P. 8(a). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ...claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (citing *Bell Atlantic v. Twombly*, 127 S.Ct. 1955). In this motion, Cargill has demonstrated that it has notice of Progressive's tying claims and the grounds upon which they rest.

Moreover, Cargill did not address the elements of tying under the "rule of reason" analysis, other than to conclude in a footnote that, "Progressive had failed to allege that Cargill has entered into a tying arrangement." "Even if some or all of the elements of a *per se* violation are absent, a tying arrangement may be found to violation section 1 under the standard of the 'rule of reason.'" *Fortner Enterprises, Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 500 (1969); *see also County of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1157-58 (9th Cir. 2001) (Tying in violation of Section One of the Sherman Act can either be a *per se* violation or a violation of the rule of reason); *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404 (outlining less stringent rule of reason analysis).

For these reasons, Cargill has not demonstrated that Progressive's tying claims fail to state a claim. Accordingly, Cargill's motion to dismiss counts 4-6 is denied.

**D.     Attempted Monopolization**

In count 7, Progressive alleges that Cargill attempted to monopolize the beef blood feed market in the West Coast Region. Section Two of the Sherman Act, 15 U.S.C. §2, makes it an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce among the several states." To prevail on an attempted monopolization claim, Progressive must establish: "(1) a specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving monopoly power, and (4) antitrust injury." *Image Tech. Servs. v. Eastman Kodak Co.,* 125 F.3d 1195, 1202 (9th Cir. 1999) ("Kodak II")(citing *Rebel Oil Co., Inc. v. Atlantic Richfield, Co.*, 51 F.3d 1421, 1434 (9th Cir). In addition, an allegation of monopoly power may be an implicit requirement of the third prong related to the probability of success. *Cal Computer Prod., Inc. v IBM Corp.*, 613 F.2d 727, 737 (9th Cir. 1979).

Cargill argues that Progressive's attempted monopolization claim must be dismissed because Progressive failed to plead that Cargill has a dominant share of the market and, therefore, Progressive failed to allege the probability of success in achieving monopoly power. Monopoly power is the "power to control prices or exclude competition." *Rebel Oil Co., Inc. v Atlantic Richfield, Co.,* 51 F.3d 1421, 1434 (9th Cir.1995). Monopoly power may be proven through either direct or circumstantial evidence. *Id.* To demonstrate monopoly power by circumstantial evidence, a plaintiff must: "(1) define the relevant market; (2) show that the defendant owns a dominant share of that market, and (3) show that there are significant barriers to entry." *Rebel Oil*, 51 F.3d 1421, 1434 (citations omitted).

Progressive contends that it is not required to plead specific market share in order to demonstrate that Cargill has a dangerous probability of success in attaining market power. The Ninth Circuit has instructed courts to analyze "market share, entry barriers, and the capacity of existing competitors to expand output" when considering market power for attempted monopolization claims. *Rebel Oil*, 51 F.3d at 1438. Progressive argues that this court should "be wary of the numbers game of market percentage when considering attempt-to-monopolize claims." *Id.*

In the SACC, Progressive does not plead Cargill's market share percentage. However, unlike in the FACC, Progressive does plead that a number of entry barriers exist to ameliorate Cargill's dangerous probability of success. *See* SACC ¶¶ 53-55. Market share is a question of fact. Here, Progressive asserted facts in support of its claims to satisfy the "plausibility" requirement of *Twombly*, *supra*. Therefore, Cargill's motion to dismiss Progressive's attempted monopolization claim, count 7, is denied.

**D.   Unfair Trade Practices**

In count 8 of the SACC, Progressive alleges a violation of Cal. Bus. & Prof. Code section 17000, *et seq*. Cal. Bus. & Prof. Code section 17043 ("Section 17043") makes it unlawful "to sell any article or product at less than the cost thereof...for the purpose of injuring competitors or destroying competition." Progressive asserts that Cargill has "engaged in the practice of selling [its] beef blood meal feed at less than cost." Cargill argues that this claim must fail, because the assertion is conclusory, is not supported by fact, and is inconsistent with several other allegations in the SACC. However, as discussed above, Progressive need only satisfy Fed. R. Civ. P. 8 in its pleading. Here, Progressive alleges a Section 17403 violation by pleading a short and plain statement, which, if accepted as true, properly states a claim.

Therefore, Cargill's motion to dismiss count 8 is denied.

**E.     Conspiracy to Tie and Civil Conspiracy**

The SACC contains two counterclaims of conspiracy: (1) count 7–conspiracy to tie and (2) count 19– civil conspiracy (collectively "conspiracy claims"). Cargill argues that Progressive fails to state the conspiracy claims, because CAN is a wholly owned subsidiary of Cargill, Inc., and they are, therefore, incapable of conspiring with each other. For support, Cargill relies on *Copperweld, supra*. Cargill does not address how antitrust conspiracy case law relates to civil conspiracy. Progressive argues that Cargill's motion to dismiss the conspiracy claims must fail because: (1) Cargill is estopped from moving to dismiss count 19–civil conspiracy and (2) Cargill wrongfully relies on extrinsic evidence in support of its motion to dismiss the conspiracy claims.

Progressive argues that Cargill is estopped from moving to dismiss count 19–civil conspiracy. Progressive contends Cargill should have moved to dismiss count 19 in its motion to dismiss the first amended counterclaim. Progressive contends that count 19 is unchanged in the SACC, and Fed. R. Civ. P. 12 "works against piecemeal consideration of a case." *Albany Ins. Co. v. Almacendaora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993).

Federal Rule of Civil Procedure 12(b)(6) is not a waivable 12(b) motion. *See* Fed. R. Civ. P. 12(g), 12(h)(2). Notably, none of the cases cited by Progressive relates to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Further, while this Court discourages a piecemeal presentation of a case, the allegations of the first amended counterclaim are wholly different from the allegations in the SACC. Thus, while count 19 remained the same, the facts upon which it was based, and the applicable law, changed. Therefore, Cargill is not estopped from moving to dismiss count 19.

Next, Progressive argues that Cargill "seeks to import new facts in support of its motion, which is plainly improper on a motion to dismiss." In its motion, Cargill asserts that CAN is a "wholly-owned subsidiary" of Cargill, Inc. Three statements in the SACC define the relationship between Cargill, Inc. and CAN. First, Progressive identifies CAN as a "division of Cargill[,Inc.]." SACC ¶ 7. Second, Progressive pleads that "Counterdefendants [Cargill, Inc. and CAN] were acting on their own behalf and/or as the parents, subsidiaries, agents, representatives, alterego and/or licensees of each other, or that as yet undetermined corporate or contractual relationships existed between or among Counterdefendants."

9

SACC ¶ 9. Third, Progressive alleges that "Counterdefendants [Cargill, Inc. and CAN] are separate corporate entities capable of conspiring with one another, and did conspire among themselves, as well as with other business entities and/or individuals not named in this Counterclaim." SACC ¶ 99. Thus, Cargill relied on one characterization in the SACC, but ignored the others pleaded in the alternative.

This Court finds that Cargill's motion to dismiss the conspiracy claims must fail. If CAN is a wholly-owned subsidiary or a division of Cargill, Inc., then Progressive fails to state a claim. *See Copperweld Co. v. Independence Tube Co.*, 467 U.S. 752 (1984) (a single firm's conspiracy does not state a claim under Section One of the Sherman Act). However, Progressive also alleged that the corporate or contractual relationship existing between or among Cargill, Inc. and CAN was "undetermined." SACC ¶ 9. To arrive at the appropriate legal conclusion, the Court requires facts outside of the pleadings to determine the true relationship between Cargill, Inc. and CAN. Accepting the allegations of the pleading as true, even if pleaded in the alternative, Cargill, Inc. and CAN may be capable of conspiring with each other. Therefore, Cargill's motion to dismiss counts 7 and 19 is denied.

## IV. CONCLUSION

For the foregoing reasons, Cargill's motion to dismiss Progressive's SACC is denied in full. IT IS SO ORDERED.

Dated:   November 27, 2007         /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE