**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARGILL INCORPORATED and CAN TECHNOLOGIES, | CASE NO. CV-F-07-349- LJO-SMS |
| Plaintiffs, | **ORDER ON PROGRESSIVE  MOTION IN LIMINE NUMBER 7** |
| vs. | |
| MATTHEW BUDINE, et al., Defendants. | |
| _____/ | |

**Introduction**

The Court read and reviewed the memoranda in support, opposition, and rebuttal to the pending motion in limine.  Defendants and Counterclaim Plaintiffs Matthew Budine, Luciana Jonkman, Brian Sundberg, and Progressive Dairy Solutions (collectively "Progressive") submitted this motion in limine on July 2, 2008. Plaintiffs and Counterclaim Defendants Cargill Inc. and CAN Technologies ("Cargill") opposed the motion on July 11, 2008.  Per this Court's order, Progressive replied on July 17, 2008.

Two issues are presented to this Court.  The first issue is whether Progressive waived its attorney-client privilege, for failure to object timely to the testimony, as to privileged communications discussed in Mr. Schwegel's testimony regarding a "crooked yardstick" procedure.  The Court finds that Progressive's failure to object timely to the testimony it elicited constitutes a limited waiver regarding that testimony only.  The second issue is whether the attorney-client privilege was waived as to the communications at the March 3, 2007 meeting at Folger, Levine & Kahn ("Folger") among the attorney, Ken Kelleher ("Mr. Kelleher"), Mr. Todd Schwegel, and Progressive Defendants Mr. Budine,  Mr.

1

Sundberg, Progressive Dairy Solutions, Inc., and Ms. Jonkman regarding the attorney's advice to perform a "clean room" or "clean office" procedure ("communications").  This Court finds that the privilege was waived unequivocally by Mr. Schwegel, and Progressive Defendants Mr. Budine, Mr. Sundberg and Progressive Dairy Solutions, Inc. as to the "clean room" communications.  The Court finds further that Progressive Defendant Ms. Jonkman did not waive her privilege as to the communications. Therefore, the communications may be used to explore the statements made by Mr. Budine and Mr. Sundberg, but may not be used against Ms. Jonkman.  Accordingly, Progressive is ordered to submit a proposed limiting instruction to preclude the use of the privileged communications against Ms. Jonkman.

## **Background**

Progressive seeks to exclude Mr. Schwegel's testimony as it relates to privileged communications made during an initial consultation with an employment lawyer Mr. Kelleher at Folger, Levin & Kahn.  In his video deposition, Mr. Schwegel's testified as follows:

Q.  Same for No. 11-Paragraph 11, where you say "Budine instructed me to create a spreadsheet," do you know if there's anything in writing you're aware of that references that?
A. I believe there would be that in writing, sir.
Q. Okay.  Where?
A.  **It would be potentially in the notes of Folger, Levine & Kahn on our meeting of March 3rd where as a group we all sat down and talked about what went on.  I'm pretty sure in that meeting--well, I know--I know that in that meeting Matt Budine expressed to the group that--or pressed to the group of lawyers that he asked me to construct this based on a theory he had called "a crooked yardstick," so that information might be contained in a set of notes that the lawyers from Folger, Levine, & Kahn took on--**
Q. Okay.  But do you know if it exists or not because deposition--the deposition notice..says that you were to produce...any and all documents reflecting the documents....
...
A**. I do not have any documents because as part of my clean room, I turned over all documents to--that I--all documents that I know of to Michael Kelleher with FLK and he had all paper documents--all--everything**.
Q. Okay.  So the point is...do you know if there is a document in writing that confirms that Mr. Budine instructed you to do that?
A. **I'm saying there potentially is a statement made by Mr. Budine in front of Mike Kelleher and that group of attorneys that would be his testimony for that.**
Q.  My question is in writing, sir, do you know of a writing....
...
Q.  This clean room procedure, is that in writing someplace, that recommendation?  Where is that?  Is there something in writing that sets forth that recommendation you just testified to?
...
A.  Not that I am aware of.
Q.  But you put this--what's in Exhibit 3 here in writing to them, right about--
A.  In writing to who?
Q.--about setting the hook for Steve, right?

2

...
Ms. Wyse: He's saying someone else recommended the clean room. He's not saying he recommended it.
**The Witness: I am not saying I did. I was recommended the clean room procedure by Folger, Levin & Kahn as they made the same recommendation to Matt Budine, Luciana Jonkman, Mr. Brian Sundberg and Mr. Douglas DeGroff on the evening of approximately March 3rd.**
Mr. Marderosian: Is he waiving attorney-client privilege?
Ms. Wyse: Yes.
...
**Mr. Marderosian: I am objecting now.**

Schwegel Depo., 177:6-178:23, 245:3-246:24 (emphasis added).

## Discussion

"[T]he burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 25 (9th Cir. 1981). One of the elements that the asserting party must prove is that it has not waived the privilege. *Id.* (citing *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978) (quoting 8 Wigmore, EVIDENCE §2292 at p. 554)). Therefore, the Progressive Defendants have the burden to prove that they did not waive the attorney-client privilege regarding the communications they now seek to protect.

## "Crooked Yardstick"

Progressive failed to object in a timely manner to Mr. Schwegel's "crooked yardstick" testimony. Failure to make a timely objection constitutes a waiver of the attorney-client privilege. *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460 (N.D. Cal. 1978). Mr. Schwegel repeatedly infused privileged communications in answers to questions elicited by Progressive's counsel without objection. Progressive's objection came 20 pages into the deposition after Mr. Schwegel's answer containing the privileged communication. Progressive's objection was in response to Mr. Schwegel's answer discussing the origin of the "clean room" procedure recommendation, a subject broader than the "crooked yardstick" testimony. Therefore, Progressive's privilege as to Mr. Schwegel's "crooked yardstick" testimony is waived by all Progressive Defendants for failure to object timely.

## "Clean Room"

Progressive argues that the "clean room" communications were not waived, because waiver requires the consent of all parties. The communications occurred between the attorney, Mr. Kelleher,

3

1   Mr. Schwegel, and Progressive Defendants Mr. Budine, Mr. Sundberg, and Ms. Jonkman at an initial

2   consultation meeting the day after all parties served with the complaint in the instant action.[1]

3   Progressive argues that Mr. Schwegel may not waive privilege of the communications as to all parties,

4   because the communications were part of an "ongoing and joint effort to set up a common defense." *In*

5   *re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997).  Progressive contends that

6   because this is either a joint defense or common interest privilege, the privilege "cannot be waived

7   without the consent of all parties." *John Morrell & Co. v. Local Union 304A of United Food & Comm'l*

8   *Workers*, AFL-CIG, 913 F.2d 544, 556 (8th Cir. 1990).

9        As demonstrated below, Mr. Budine, on behalf of himself and Progressive Dairy Solutions, Inc.,

10  and Mr. Sundberg waived their privilege of the subject communications.

11  **Mr. Budine's and Mr. Sundberg's Waiver**

12       Mr. Budine and Mr. Sundberg waived their privilege of the communications on June 24, 2008,

13  when they both testified about the communications in open court in a hearing on a motion to disqualify

14  counsel in *Burford v. Cargill Inc.*, No. 05-0283 (W.D. La.).  In that hearing, Mr. Budine testified that

15  after he was served with the complaint in the instant action, he consulted an employment attorney.  He

16  discussed the attorney recommendations in the following way:

17         Q.  Did they make some recommendation to you about what you ought to do?
           A.  Yeah.  **Their recommendation is, is to, you know, just take a leave of absence**
18         **from this industry and, you know, go find something else to do for six months to a**
           **year; and then if you wish to come back into it, you can do that.  I wasn't going to**
19         **accept that.**

20  Budine Testimony, 9:5-11.

21  Mr. Sundberg also discussed the communications in open court.  In his direct testimony, Mr. Sundberg

22  described the communications in the following way:

23         Q.  [O]ur employment lawyers scared us, of course, **and like Matt said–Matt**
           **Budine–that they wanted us to stop doing what we're doing as far as consultants,**
24         **and go do something else, then try to come back, thinking it would go away**.

25  ///

26

27         [1]Douglas DeGroff was also present at the consultation.  Mr. DeGroff is no longer a party in this lawsuit and does
    not seek to invoke the privilege.  As discussed more fully below, corporate defendant Progressive Dairy Solutions, Inc. was
28  represented by Mr. Budine.

4

1    On cross-examination, Mr. Sundberg identified the communications as taking place with Mr. Kelleher

2    at Folger, Levin & Kahn and further testified as follows:

3       **Q. And [Mr. Kelleher's] advice to you fellows was: Let this blow over, stay out of the business for a year or two, clean your records up, don't have any of Cargill's**

4       **records, and then maybe you can go back into this business.  Is that right?**
        **A.  There was no discussion of Cargill records.  I don't know what you mean by**

5       **that.**
        **Q.  Wasn't there a discussion about cleaning up?**

6       **A.  It was called a clean office.**
        **Q.  Clean office, yeah.**

7       **A.  Yes.**
        **Q.  And what did they mean by "a clean office"?**

8       **A.  I guess just to leave everything and go do something different and then come**
        **back to it.**

9       **Q.  So you'd be clean?**
        **A.  I guess that is what the term implies.**

10      **Q.  And you didn't like that, those recommendations, did you?**
        **A. No.  That wasn't the correct recommendation for what was going on.  They**

11      **didn't understand the full case.**

12   Sundberg Testimony, 96:14-98:6.

13          Mr. Budine's and Mr. Sundberg's statements constitute a waiver of the attorney-client privilege

14   with respect to the communications between Mr. Kelleher and Mr. Budine, Mr. Sundberg, and

15   Progressive Dairy Solutions, Inc.[2] regarding the "clean room" process.  *See Weil,* 647 F.2d at 24

16   (voluntary disclosure of a privileged attorney communication to a third party constitutes waiver of

17   privilege).  *See also*, *Hawkins v. Stables*, 148 F.3d 379 (4th Cir. 1998).  Mr. Budine and Mr. Sundberg

18   both testified about Mr. Kelleher's recommendations in that initial consultation attended by all parties.

19   Mr. Sundberg testified that the opinions he and Mr. Budine attributed to Mr. Kelleher related to their

20   understanding of the "clean room" process.  Thus, the communications disclosed by Mr. Budine and Mr.

21   Sundberg describe the same meeting and communications discussed by Mr. Schwegel in his deposition

22   testimony.   Mr. Budine and Mr. Sundberg did not assert their privilege when asked about what

23   _____

24       [2]Mr. Budine, as owner and CEO of Progressive Dairy Solutions, Inc., represents both himself and the corporation in this action.  An individual's privilege is limited "to the extent that communications made in a corporate officer's personal

25   capacity are separable from those made in his corporate capacity." *In re Grand Jury Subpoena (Newparent)*, 274 F.3d 563, 567-68 (1st Cir. 2001).  Moreover, "a corporation may unilaterally waive the attorney client privilege...notwithstanding the

26   existence of an individual attorney-client relationship between him and the corporation's counsel." *Id*.  Although Progressive does not raise the issue, to the extent it may propose that "'dual' communications be treated as jointly privileged such that

27   the consent of all parties would be required to waive the privilege...they fail to cite authority supporting this position, and we ultimately decline to accept it: permitting a joint privilege of this type would unduly broaden the attorney-client privilege

28   by allowing parties outside a given attorney-client relationship to prevent disclosure of statements made by the client." *Id.*

1    recommendations Mr. Kelleher made.  Rather, they discussed freely, in a public forum, the topic of the

2    communications they now seek to protect.  Since Mr. Budine and Mr. Sundberg revealed the subject of

3    the communications purposefully, Cargill may have the opportunity to explore the subject.  *See United*

4    *States of America v. Agnello*, 135 F. Supp.2d 380, 384 (E.D.N.Y.), *aff'd*, 16 Fed. Appx. 57 (2d Cir.

5    2001) (corporate and individual defendants may not object on privilege grounds when prior testimony

6    revealed the subject, even when not all defendants waived).

7           The waiver is effective in this action even though it occurred in a separate judicial proceeding.

8    "The principle of waiver for all purposes extends from one judicial proceeding to another.  Thus a

9    privilege waiver in one proceeding will be a waiver in all subsequent proceedings.  One cannot pick and

10   choose one proceeding in which to waive the privilege and then hope to recapture it in another." I

11   Epstein, THE ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE ("Epstein"), p.581.

12          Additionally, the subject of the communications is waived as to Mr. Budine, Mr. Sundberg, and

13   Progressive Dairy Solutions, Inc. even though Ms. Jonkman did not waive her privilege.  The Court

14   recognizes that waiver of the attorney-client privilege "relating to information shared in joint defense

15   communications by one party to such communications will not constitute a waiver by any other party

16   to such communications." *Wester Fuels Ass'n Inc. v. Burlington Northern R. Co.*, 102 F.R.D. 201, 203

17   (D. Wyo. 1984).  When the "joint defense" privilege applies, however, a party always remains free to

18   disclose his own communications. *See In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th

19   Cir. 1997).  "Thus, the existence of a joint defense agreement does not increase the number of parties

20   whose consent is needed to waive the attorney-client privilege; it merely prevents disclosure of a

21   communication made in the course of preparing a joint defense by the third party to whom it was made."

22   *In re Grand Jury Subpoena (Newparent)*, 274 F.3d 563, 572-73 (1st Cir. 2001).  Accordingly, the

23   privilege continues to extend to Ms. Jonkman and she invokes its protection properly in this motion.

24   To protect Ms. Jonkman's privilege, this Court shall use a protective, limiting instruction to preclude

25   use of the privileged communications against her, the sole non-disclosing party. Epstein, p.323-24 ("The

26   line of cases which hold that waiver by one party to the joint privilege does not constitute a waiver for

27   any other...can only be so as to privileges that have not been shared, since if one party to the joint

28   privilege discloses the privileged communications, the cat is out of the bag.  Nonetheless a protective

6

1  order could be entered precluding use of the privileged communications against any but the disclosing

2  party.").

3  **Scope of Waiver**

4      A waiver of privilege as to one communication extends to other communications relating to the

5  same subject matter. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).  "The client's offer

6  of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to

7  all other communications to the attorney on the same matter." 8 Wigmore, EVIDENCE §2328 at p. 638.

8  "There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts

9  weight the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the

10 parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup Corp.*, 412 F.3d

11 1340, 1349-50 (Fed. Cir. 2005), *cert. denied*, 126 S.Ct. 1768 (2006).

12     The circumstances of the disclosure favor extending the waiver to include Mr. Schwegel's

13 testimony.  Mr. Budine and Mr. Sundberg purposely disclosed the subject communications in the

14 proceeding.  Where disclosure was purposeful, generally *all* documents on the same subject matter will

15 and should be ordered disclosed lest the disclosing party manipulate the disclosure unfairly to its own

16 advantage." Epstein, p.586 (emphasis added); *see also, Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156,

17 1162 (1992).  The balancing with respect to the scope of disclosure is predicated on notions of

18 fundamental fairness and is informed by a full discovery of the truth on the matter put into issue.  "The

19 client's offer of his own or the attorney's testimony as to a part of any communication to the attorney

20 is a waiver as to the whole of the communication, on the analogy of the principle of completeness." 8

21 Wigmore, EVIDENCE §2328 at p. 638.  Moreover, contradictory opinions [about the same subject matter]

22 are waived and become discoverable. *See Abbott Labs. v. Baxter Travenol Labs., Inc.*, 676 F. Supp. 831,

23 832 (N.D. Ill. 1987).  Notions of fairness and completeness favor inclusion of Mr. Schwegel's

24 contradictory understand of what Mr. Kelleher's advice was regarding the "clean room" process.

25     Progressive's argument that "the testimony offered by both Mr. Budine and Mr. Sundberg does

26 not pertain to the same information disclosed by Mr. Schwegel" is unavailing.  Rather than distinguish

27 the subject matter, Progressive argues that extending the waiver to Mr. Schwegel's testimony would be

28 "inequitable" or would result in "unfair prejudice."  However, this Court must also weigh the inequity

that would result if Progressive were to use the testimony for its advantage in one proceeding and then seek to preclude it for its advantage in another.  Moreover, this Court does not exclude facts simply because they are unfavorable to a party, which is the essence of Progressive's position.  Accordingly, Progressive fails to satisfy its burden of establishing that Mr. Budine, Mr. Sundberg, and Progressive Dairy Solutions, Inc. did not waive their privilege regarding the advice from the Folger law firm about the "clean office" or "clean room" procedure.

### Conclusion and Order

For the foregoing reasons, this Court:

1. FINDS that Mr. Schwegel and all Progressive Defendants waived the attorney-client privilege as it relates to the "crooked yardstick" communication;

2. FINDS that Mr. Sundberg, Mr. Budine, Mr. Schwegel, and Progressive Dairy Solutions, Inc. have waived the attorney client privilege as to the communications at the March 3, 2007 meeting at Folger, Levine & Kahn regarding the attorney's advice to perform a "clean room" or "clean office" procedure;

3. FINDS that Ms. Jonkman did not waive her privilege as to the "clean room" communications; and

4. ORDERS Progressive, no later than July 23, 2008, to file and serve a proposed limiting instruction to preclude the use of the "clean room" testimony against Mr. Jonkman.

IT IS SO ORDERED.

Dated:    **July 21, 2008**                                    **/s/ Lawrence J. O'Neill**
                                                                UNITED STATES DISTRICT JUDGE