IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARGILL INC. AND CAN TECHNOLOGIES, INC., | CASE NO. CV-F-07-0349- LJO-SMS |
| Plaintiffs, | **TRIAL DECISION ON PROGRESSIVE'S COUNTERCLAIM** |
| vs. | |
| PROGRESSIVE DAIRY SOLUTIONS, INC., MATTHEW BUDINE, LUCIANA JONKMAN and BRIAN SUNDBERG | |
| Defendants. / | |
| PROGRESSIVE DAIRY SOLUTIONS INC., MATTHEW BUDINE, LUCIANA JONKMAN, and BRIAN SUNDBERG, | |
| Counterclaimants, | |
| vs. | |
| CARGILL INCORPORATED and CAN TECHNOLOGIES. | |
| Counterclaim Defendants. / | |

///

///

1

**INTRODUCTION**

Defendants' and counterclaim plaintiffs'[1] statutory unfair competition counterclaim, pursuant to Cal. Bus. & Prof. Code §17200 et seq. ("Section 17200" or "UCL"), was tried before this Court concurrently with the July 29, 2008 through August 14, 2008 jury trial in this matter. The Court heard testimony of witnesses and reviewed evidence submitted by the parties.[2] At the end of trial, the parties agreed to submit further written memoranda and proposed findings of fact and conclusion of law. Plaintiffs and Counterclaim defendants Cargill, Inc. and CAN Technologies (collectively "Cargill") filed its memorandum on August 14, 2008.[3] Progressive filed its memorandum on August 18, 2008 and an amended proposed findings of fact and conclusions of law on August 19, 2008. Cargill filed its response brief and proposed findings of fact and conclusions of law on August 25, 2008. Having considered the parties' memoranda and exhibits, and the applicable testimony and evidence presented at trial, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

**STANDARD OF REVIEW**

In a trials without a jury, Fed. R. Civ. P. 52(a) requires a court to find the facts specially and state separately its conclusions of law thereon. *See, Barnett v. Sea Land Service*, 875 F.2d 741, 744 (9th Cir. 1989). Upon review, due regard is given to the district court's judgment as to the credibility of the

---

[1] Counterclaim plaintiffs are Progressive Dairy Solutions, Inc. ("Progressive Dairy Solutions"), Matthew Budine ("Mr. Budine"), Luciana Jonkman ("Ms. Jonkman"), and Brian Sundberg ("Mr. Sundberg") (collectively "Progressive") (individual defendants collectively referred to as "Progressive Parties").

[2] In its counter-complaint, Progressive pleaded 19 causes of action against Cargill. Progressive dismissed its antitrust counterclaims (counts 4-7) on May 6, 2008. This Court entered judgment against Progressive on the following counterclaims through summary judgment on May 30, 2008: count 1 (Latham Act Section 43(a); count 9 (false advertising); count 13 (fraud); count 18 (unjust enrichment); and count 19 (civil conspiracy). Progressive abandoned its count 8 (unfair trade practices) before trial. Progressive dismissed the following counterclaims on August 11, 208: count 2 (common law unfair competition); count 10 (defamation); count 11 (intentional interference with contractual relations); count 12 (intentional interference with prospective economic advantage); count 14 (nonpayment of wages); count 15 (breach of contract); count 16 (breach of implied covenant of good faith and fair dealing); count 17 (breach of implied covenant of good faith and fair dealing. Also on August 11, 2008, Progressive dismissed its unjust enrichment claim for relief. Therefore, Progressive's count 3 (UCL) is the sole surviving counterclaim in this action.

[3] Cargill erroneously moved for judgment as a matter of law on Progressive's Section 17200 claim. Judgement as a matter of law is a procedure for trials by jury. Fed. R. Civ. P. 50. There is no right to a jury trial under Section 17200. Cal. Bus. Prof. Code §17203. Accordingly, this Court proceeds pursuant to Fed. R. Civ. P. 52(a). *Tsai v. Rosenthal*, 297 F.2d 614 (8th Cir. 1961) (Rule 52 applies to actions tried to court without jury). .

witnesses, Fed. R. Civ. P. 52(a). Courts of Appeal give deference to a district court's choice between two permissible views of evidence, provided it is not clearly erroneous. *Moody v. Proctor*, 986 F.2d 239, 241 (8th Cir. 1993).

### FACTUAL FINDINGS

Cargill, Inc. manufactures feed for dairy herds. Cargill Animal Nutrition ("CAN"), a corporation wholly-owned by Cargill, Inc., provides dairy feed formulation services to customers who buy Cargill Inc.'s manufactured feed. The Progressive Parties are former CAN employees. Mr. Budine was the General Manager of CAN's Pacific Coast region, while Mr. Sundberg and Ms. Jonkman were dairy management consultants and nutritionists under Mr. Budine's management.

On January 31, 2007, the Progressive Parties resigned from Cargill to form Progressive Dairy Solutions. Two other CAN dairy nutrition consultants also resigned on that day. Todd Schwegel resigned to become a Progressive employee. Doug DeGroff ("Mr. DeGroff") resigned to form Diversified Dairy Solutions ("Diversified").[4]

Progressive Dairy Solutions provides nutritional consulting services to dairy farmers. Like CAN, Progressive Dairy Solutions creates custom feed formulations designed to maximize overall animal health, milk production, reproduction and growth. Progressive Dairy Solutions does not manufacture feed. Rather, it bids out its feed formulations to feed manufacturers for production to one or more feed manufacturers, including Cargill, Inc. In addition to its consulting services, Progressive developed various premix packs. Progressive uses its premix in the dairy nutrition formulas it develops for dairy farmers.

On January 31, 2007, Mr. Budine and Chuck Warta ("Mr. Warta"), a CAN vice-president, discussed a future business relationship between Cargill and Progressive. Mr. Budine told Mr. Warta that Progressive wanted Cargill to bid to manufacture feed for Progressive's customers. Mr. Budine presented an agreement for Cargill's consideration that included a non-compete provision. In that provision, Cargill was required to refrain from providing dairy nutrition consulting services to any dairy for which Progressive develops a formula and submits to Cargill for feed manufacture. Although

---

[4] Although originally named as defendants, Todd Schwegel, Mr. DeGroff and Diversified settled this action with Cargill.

1  Cargill could not provide nutrition consulting services to those dairies, Cargill would manufacture the
2  customers' dairy feed (provided Cargill won the bid). After negotiation between the parties, Mr. Hall
3  executed the non-compete agreement on behalf of Cargill on February 7, 2007.

4  On January 31, 2007, Mr. Warta sent an email to CAN vice-president Dave Cieslak, CAN
5  president Todd Hall and CAN Pacific Coast managers.  In the email, Mr. Warta addressed the
6  Progressive Parties' resignations and provided a communication outline regarding the resignations.  In
7  the email, Mr. Warta suggested that Cargill "plant a little seed that from the dairy farmers [sic]
8  perspective, we are not so comfortable with the way these past employees seem to plan on operating."

9  Progressive and Diversified began to submit formulas to Cargill for bidding.  These formulas
10 were for customers that the Progressive Parties and Mr. DeGroff had consulted on behalf of Cargill
11 until their resignations.  Cargill elected to bid on many formulas submitted by Mr. DeGroff on behalf
12 of Diversified.  Cargill elected not to bid on any of the formulas submitted by Progressive.

13 After Progressive submitted its formulas to Cargill, Russell Riecken ("Mr. Riecken"), general
14 manager of Cargill's Pacific Coast Division wrote an email to business manager Robert Shubert ("Mr.
15 Shubert").  In the email, Mr. Riecken authorizes Mr. Shubert to replace Progressive's premix with
16 Cargill's premix and to submit Cargill's re-created formula to the customer.  Mr. Riecken wanted to
17 take this action to make Progressive "squirm" when Progressive had to tell dairy customers how much
18 Progressive's premix cost in comparison to Cargill's premix.

19 Mr. DeGroff uses Progressive's premix in the dairy formulas he prepares for his customers.
20 In manufacturing feed for the Diversified customers, Cargill is required to purchase Progressive's
21 premix.  As of July 2008, Cargill had paid Progressive $1.8 million for premix.  Mr. DeGroff's use of
22 Progressive's premix was a significant source of revenue for Progressive from 2007-2008.

23 Cargill proposed to enter into an agreement with Mr. DeGroff to assist him in developing his
24 own premix.  The premix developed by Cargill for Mr. DeGroff would be owned by Mr. DeGroff and
25 Mr. DeGroff was not required to use Cargill as a feed manufacturer to manufacture the premix.
26 Eventually, Mr. DeGroff decided against this arrangement. Cargill proposed this agreement in an effort
27 to usurp Progressive's profits and to avoid paying Progressive for its premix.

28 On March 1, 2007, Cargill filed the instant action.  Cargill asserted fourteen claims against

Progressive Dairy Solutions and the individual Progressive Parties, including misappropriation of trade secrets, breach of contract, unfair competition, intentional interference with prospective economic advantage, defamation, civil conspiracy, and breach of the duty of loyalty.

On March 1, 2007, Cargill filed an ex parte motion for temporary restraining order. The following documents were among those submitted with that motion: (1) meeting notes indicating that the Progressive Parties planned to leave Cargill; (2) documents demonstrating that Progressive and Diversified were incorporated before the Progressive Parties and Mr. DeGroff resigned from Cargill; (3) emails from Ms. Jonkman's Cargill email account to her personal email account containing information from the Cargill BILLS system; (4) a document confirming that Mr. Budine obtained Cargill's cost data for its California plants weeks before resigning; (5) logs that Mr. Budine accessed the BILLS system more than a dozen times in January 2007, and (6) documents revealing that Mr. Budine purchased a new external hard drive from Dell days before resigning. Cargill's ex parte temporary restraining order was granted. Additionally, Cargill discovered evidence that the Progressive Parties deleted files from their Cargill computers before resigning from Cargill.

On March 2, 2007, Cargill sent letters announcing that the lawsuit was filed against the Progressive Parties. On March 6, 2008, Cargill issued a news release to publications in the dairy industry announcing that it filed this action against Progressive. Cargill posted the complaint on its website. Although the letters and the news release were truthful recitations of fact regarding this lawsuit, Cargill's motive for publishing this material was vindictive in nature.

On August 14, 2008, the jury rendered its verdict and unanimously agreed that Cargill did not own information related to its dairy nutrition business that was a trade secret. The jury found that the Progressive Parties: (1) did not breach their agreements with Cargill; (2) did not acquire or use Cargill Information and/or trade secrets; (3) did not take or destroy Cargill's confidential information and/or trade secrets; (4) did not transact business on their own account while working for Cargill; (5) were not unjustly enriched; and (6) did not engage in civil conspiracy. The jury found that Mr. Budine did not make a false representation of important fact and did not breach his fiduciary duty owed to Cargill. The jury also found that Cargill's claim of misappropriation was objectively specious, but that Cargill did engage in subjective misconduct in pursuing the misappropriation claim.

Cargill followed a course of conduct in an attempt to punish Progressive and to hinder Progressive's ability to compete. There is no evidence that either competition or the competitor (Progressive) was harmed in the market.

### LEGAL DISCUSSION AND CONCLUSIONS

California's UCL prohibits "unfair competition," which it defines as: (1) unlawful, unfair, or fraudulent business acts or practices; (2) unfair deceptive, untrue, or misleading advertising; and (3) any act prohibited by Chapter 1 (false advertising). Cal. Bus. & Prof. Code §17200. The scope of California's UCL is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Rubin v. Green*, 4 Cal.4th 1187, 1200 (1993) (quoted in *Cal-Tech Comm. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). A practice may be deemed "unfair even if not specifically proscribed by some other law" provided that "unfair" business practice claim is "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id*. at 166-87. The UCL was enacted "for the protection of *competition*, not *competitors*." *Cal-Tech*, 20 Cal. 4th at 186 (quoting *Cargill, Inc. v. Monfort of Colorado, Inc*., 479 U.S. 104, 115 (1986) (italics in original)).

Progressive lacks standing to pursue the Section 17200 claim, because Progressive provided no evidence of either an injury in fact or lost money or property. "California law previously authorized any person acting for the general public to sue for relief from unfair competition. After Proposition 64 [in 2004], a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.'" *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006). Thus, under the revised law, only the Attorney General and certain other public officials can sue on behalf of the public at large. Other persons are permitted sue, as noted, only if they have suffered "injury in fact and [have] lost money or property." Cal. Bus. & Prof. Code, § 17204. "This language discloses a clear requirement that injury must be economic, at least in part, for a plaintiff to have standing under Business and Professions Code section 17204." *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 147 (Ct. App. 5th Dist. 2008); *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1171 (E.D. Cal. 2007). Here, Progressive provided no evidence of an injury in fact. Progressive has not shown any economic injury as a result of Cargill's

actions. Accordingly, Progressive lacks standing raise a Section 17200 claim.

Additionally, Progressive states no cognizable claim for relief under Section 17200. "Prevailing plaintiffs [in a UCL claim] are generally limited to injunctive relief and restitution." *Cal-Tech*, 20 Cal.4th at 179. Thus, this Court may enjoin ongoing wrongful business conduct or award restitution. The UCL remedies are limited because "the Legislature did not intend to authorize courts to order monetary remedies other than restitution in an individual action." *Korea Supply Co. v. Lockheed Martin Corp*, 29 Cal.4th 1134, 1148 (2003). An award for restitution pursuant to California's UCL "operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice" and requires that restitution "must be of a measurable amount to restore to the plaintiff what has been acquired by violations of the statutes, and that measurable amount must be supported by evidence." *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 698 (2006) (italics in original).

Here, Progressive seeks neither injunctive relief nor restitution.[5] Instead, Progressive seeks to recover attorneys' fees. Progressive's attorneys' fees request contravenes the Unfair Competition Law's intent, which "is to make whole, equitably, the victim of an unfair practice...[I]n the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve this deterrent effect." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998). Moreover, while Progressive now argues that it is entitled to attorneys' fee, Progressive concedes that attorneys fees are not recoverable under Section 17200 (Pretrial Order, 48) (citing *Cal. Serv. Station & Auto Repair Ass'n v. Union Oil Co.*, 232 Cal. App. 3d 44, 58 (1991)).[6]

## V. CONCLUSION AND ORDER

Based on the foregoing findings of fact and conclusions of law, this Court finds in favor of Cargill and against Progressive on Progressive's counterclaim count 3 (Section 17200). Because this decision concludes this action in its entirety as to all parties and all claims, this Court orders the parties

---

[5] Although Progressive claimed unjust enrichment, Progressive dismissed that claim on August 11, 2008.

[6] Because this Court rules that Progressive lacks standing to raise its Section 17200 claim, this Court restricts its findings of fact and conclusions of law to this initial question. The Court makes no findings of fact and conclusions of law beyond those expressed explicitly in this opinion.

to meet and confer on a proposed judgment to be entered pursuant to Fed. R. Civ. P. 58.  The proposed judgment should be consistent with both the jury's verdict and this Court's decision.  The Court further orders Progressive to submit a proposed judgment  for this Court's consideration and signature **no later than September 4, 2008**.

IT IS SO ORDERED.

**Dated:     August 28, 2008**                             **/s/ Lawrence J. O'Neill**
                                                                                 UNITED STATES DISTRICT JUDGE