1

2

3

4

5

6

7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    CARGILL INC. AND CAN                    CASE NO. CV-F-07-0349- LJO-SMS
      TECHNOLOGIES, INC.,
12
                          Plaintiffs,         **ORDER ON CARGILL'S MOTION FOR NEW**
13                                            **TRIAL** (Doc. 439, 441)
                  vs.
14

15    PROGRESSIVE DAIRY SOLUTIONS,
      INC., MATTHEW BUDINE, LUCIANA
16    JONKMAN and BRIAN SUNDBERG

17                  Defendants.
                                                           /
18

19    PROGRESSIVE DAIRY SOLUTIONS
      INC., MATTHEW BUDINE, LUCIANA
20    JONKMAN, and BRIAN SUNDBERG,

21                      Counterclaimants,

22          vs.

23    CARGILL INCORPORATED and
      CAN TECHNOLOGIES.
24
                  Counterclaim Defendants.
25

26    _____/

27    ///

28    ///

                              1

Plaintiffs and counterclaim defendants Cargill, Inc. and CAN Technologies (collectively "Cargill") move for a new trial, pursuant to Fed. R. Civ. P. 59.  Cargill argues that a new trial is warranted for the following reasons:

1.  The admission of evidence pertaining to the *Acme* and *Burford* lawsuits was erroneous, because the evidence was irrelevant, Progressive submitted evidence beyond the scope of this Court's rulings, the evidence was prejudicial, and this Court's limiting instruction was insufficient to cure the prejudice;

2.  The admission of evidence related to Cargill's motives and probable cause for filing the lawsuit merits a new trial as the evidence was irrelevant, barred by the litigation privilege, and prejudicial and confusing to the jury;

3.  Submission of Progressive's bad faith claim to the jury was an error of law that unfairly prejudiced Cargill; and

4.  The verdict is contrary to the clear weight of the evidence.

Defendants and counterclaim plaintiffs, collectively referred to as "Progressive,"[1] opposed this motion on October 6, 2008.  Having considered Cargill's motion, memorandum and exhibits in support thereof, and Progressive's memorandum and exhibits, this Court vacates the October 27, 2008 hearing, pursuant to L.R. 78-230(h) and issues the following order.

### Background

Cargill tried 12 claims against Progressive in a July 29, 2008 through August 14, 2008 jury trial. Progressive denied Cargill's claims and argued that Cargill filed its misappropriation of trade secrets claim against Progressive in bad faith.  Concurrently, Progressive tried its statutory unfair competition counterclaim, pursuant to Cal. Bus. & Prof. Code §17200 et seq. ("Section 17200"), before this Court. On August 14, 2008, the jury reached a unanimous verdict against Cargill, and in Progressive's favor, on all of Cargill's claims submitted to the jury.  The jury further found that Cargill's misappropriation claim was objectively specious, but that Cargill did not engage in subjective misconduct in pursuing

[1]Counterclaim plaintiffs are Progressive Dairy Solutions, Inc. ("Progressive Dairy Solutions"), Matthew Budine ("Mr. Budine"), Luciana Jonkman ("Ms. Jonkman"), and Brian Sundberg ("Mr. Sundberg") (collectively "Progressive") (individual defendants collectively referred to as "Progressive Parties").

1    the misappropriation claim.

2    **STANDARD OF REVIEW**

3    The Court is empowered to grant a "new trial to all or any of the parties on all or part of the

4    issues. . . for any of the reasons for which new trials have heretofore been granted in actions at law in

5    the courts of the United States." Fed. R. Civ. P. 59. The district court has "considerable discretion in

6    granting or denying the motion." *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003). A district

7    court's denial of a motion for new trial will not be overturned absent a clear abuse of discretion—i.e.,

8    "only where there is an absolute absence of evidence to support the jury's verdict." *Desrosiers v. Flight*

9    *Int'l of Florida Inc.*, 156 F.3d 952, 957 (9th Cir. 1998) (When district court balances and weighs

10    evidence based on proper legal standards, denial is "virtually unassailable").

11    **DISCUSSION**

12    ***Acme* and *Burford* Statements**

13    Cargill argues that a new trial is warranted, because "Progressive infused the trial with irrelevant

14    issues stemming from two unrelated lawsuits filed against Cargill by customers"–*Acme v. Cargill*, No.

15    03-1040 (Idaho Fifth Jud. Dist.) ("*Acme*") and *Burford et al. v. Cargill*, No. 05-0283 (W.D. La.)

16    ("*Burford*"). The *Acme* action resulted in a verdict against Cargill in 2005. The *Burford* action is a

17    putative class action currently pending. Cargill contends that evidence of these lawsuits, and of the

18    alleged livestock ingredient substitution practices at issue in those cases, was irrelevant to this case; the

19    prejudice substantially outweighed the probative value, if any; Progressive's submission of evidence

20    outside the scope of this Court's order unfairly prejudiced Cargill; and this Court's limiting instruction

21    to the jury was insufficient to cure the prejudice to Cargill.

22    Throughout this litigation, this Court has ruled on Cargill's numerous objections to

23    Progressive's reliance on *Acme* and *Burford*. First, this Court granted summary judgment in Cargill's

24    favor on Progressive's fraud and unfair competition counterclaims to the extent that Progressive's

25    claims were based on *Burford* or communications related to *Burford*. Order on Cargill's Summary

26    Judgment Motion, pp. 24-25. (Doc. 275). In response to Cargill's motion in limine, this Court ruled

27    as follows:

28    Individually-named Progressive defendants may refer to the *Acme* and *Burford* lawsuits

3

if the existence of those lawsuits explains why they did whatever they did pertaining to the facts of this lawsuit. They may not, however, use those lawsuits as a basis for their counterclaims in this action, nor may the other lawsuits be used as prior, similar acts."

Order on Cargill's Motions in Limine, 2-3. In response to Cargill's objections after opening statements, the Court reminded Progressive of the Court's motion in limine ruling and that the lawsuits should be discussed only to explain why the Progressive Defendants left Cargill. Day 2 Tr. at 21:5. Progressive assured the Court that it would not go "into any details beyond that." Day 2 Tr. at 20:21-21:4. The next day, this Court indicated that valid concerns arose under Fed. R. Evid. 403 and directed Progressive to wrap up questioning related to *Acme* and *Burford* formula changes. Day 3 Tr. 112:7-113:2. Progressive submitted that, in the future, any references would be to the fact that defendant Budine "did not like the feed formula changes," which prompted him to leave Cargill. *Id.* Thereafter, Progressive questioned witnesses about *Acme* and *Burford*, and this Court allowed such questioning for the limited, relevant purpose of motive. The Court did not allow the questioning to breach the Fed. R. Evid. 403 balancing threshold.

The Court finds, consistent with its prior rulings in this action, that the *Acme* and *Burford* evidence was relevant for the limited purpose to explain why the Progressive Defendants left Cargill. The Court incorporates its prior pre-trial and trial rulings on this issue, cited herein and on the record, for its reasoning and analysis. As this Court explained, "Motive explains fact. Motive allows you to argue circumstantial evidence." Day 3 Tr. 103:8-108:20. Cargill argued to the jury in its opening statement that the Progressive Defendants left Cargill to make money. Day 1 Tr. 17:12-15. As such, Progressive was entitled to present its own theory for why the Progressive Defendants left Cargill. Moreover, this Court found the evidence to be relevant as to witness credibility. Day 2, Tr. 17:1-18:3. The admission of the relevant and probative evidence was controlled and supervised by this Court. As such, there was no error in allowing Progressive to submit limited evidence of the *Acme* and *Burford* actions. To preclude such evidence would have been error. Additionally, Cargill fails to make a "concrete showing that the misconduct of the counsel consistently permeated the entire trial from beginning to end." *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997). Accordingly, Cargill is not entitled to a new trial on this issue.

///

4

**Cargill's Motives and Probable Cause**

Cargill argues that this Court committed error by allowing Progressive to submit evidence pertaining to Cargill's allegedly improper motives for pursing this lawsuit against Progressive.  Cargill maintains that evidence of Cargill's motive and cause for filing this lawsuit should have been excluded, because it was not relevant to any claim.  Cargill contends that the Court should have excluded the evidence because it was highly confusing to the jury and prejudicial to Cargill.  In addition, Cargill further that the litigation privilege barred submission of evidence related to Cargill's conduct.

The testimony and documentary evidence pertaining to Cargill's motive and what information Cargill had as of March 1, 2007, the day Cargill initiated this action, was relevant to: (1) Progressive's Section 17200 counterclaim, which this Court considered concurrently with the jury trial; (2) Progressive's contention that Cargill's claim for misappropriation of trade secrets was brought in bad faith, pursuant to Cal. Civ. Code sec. 3426.4; and (3) witness credibility.  Accordingly, this evidence was admitted and considered properly during the trial.  The Court incorporates its rulings on this issue made during the trial herein, as this Court has previously considered Cargill's objections on this issue.

The Court further finds no error to warrant a new trial based on the litigation privilege.  In its Order on Cargill's Summary Judgment Motion, this Court ruled that Progressive may not rely on privileged communications in this action and entered judgment against Progressive on Progressive's defamation counterclaims based on the litigation privilege. *Id*. at 9-10.  In response to Cargill's motion in limine, this Court ruled that while the litigation privilege protected the content of the communications, the privilege did not protect a tortious course of conduct.  Order on Cargill's Motion in Limine, 4; *see also*, Order on Cargill's Motion for Clarification, 1-2 (citing *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990)).  The Court clarified that although the litigation privilege barred Progressive from relying on the alleged defamatory communications and communicative conduct to assert its causes of action, the litigation privilege did not protect a tortious course of conduct, and that questions of fact remained as to whether Cargill's alleged acts demonstrated unfair business practices. *Id.* (citing *Kupiec v. American Int'l Adjustment Co.*, 235 Cal. App. 3d 1326, 1331 (1991).  The fundamental distinction between these rulings is that actions (unless communicative) are not protected by the litigation privilege.  Accordingly, the relevant evidence of Cargill's alleged unfair business practices was not

1  barred by the litigation privilege.[2]

2       The Court notes that Cargill raised the issue of the letters and press release to the jury before

3  Progressive. Day 1 Tr. 36:8-14.   Additionally, Cargill examined the first witness, Todd Hall,

4  extensively regarding what information Cargill had when he authorized the initiation of the lawsuit.

5  Day 2 Tr. 88:22-95:25.  Thus, Cargill was free to use that evidence to support its position that its claims

6  against Progressive had merit.

7       The Court further finds that the limiting instruction, proposed in large part by Cargill, was

8  sufficient to prevent jury confusion.  The Court submitted the following instruction to the jury:

9       You have heard evidence pertaining to whether Cargill conducted exit interviews for the
        Progressive Parties and whether Cargill did business with Progressive Dairy Solutions
10      and/or Doug DeGroff and Diversified Dairy Solutions.  The claims underlying these
        issues are for the Court to decide, but you may consider this evidence only for the
11      limited purpose of evaluating the credibility of witnesses.

12      You have heard evidence regarding what facts were known or not known to Cargill on
        March 1, 2007, when it filed its lawsuit.  You may consider this evidence only for the
13      limited purpose of evaluating the credibility of witnesses.

14      You also heard evidence relating to alleged ingredient substitution practices by Cargill,
        and other litigation in which Cargill may have been involved.  You may consider this
15      evidence only as it relates to the credibility of the Progressive Parties' explanations as
        to why they left Cargill.

16

17  The Court finds no evidence that the jury was confused or ignored this limiting instruction.

18  Accordingly, a new trial is not justified on these facts.

19                               **Progressive's Bad Faith Claim**

20       Cargill argues, for the first time in this motion, that this Court erroneously submitted the bad

21  faith issue to the jury.  Cargill contends that the issue should have been decided by the Court and that

22  submission of the issue to the jury is grounds for a new trial.

23       Cargill has waived its right to raise this issue.  Cargill failed to raise this issue in the Pretrial

24  Statement, in motions in limine, at any time during the trial, or at any time during the process of

25  preparing jury instructions and the verdict form.  This Court adopted Cargill's proposed verdict form

26

27       [2]Ultimately, the Court did conclude that "Cargill followed a course of conduct in an attempt to punish Progressive
     and to hinder Progressive's ability to compete [but that there was] no evidence that either competition or the competitor
     (Progressive) was harmed in the market." Trial Decision on Progressive's Counterclaim, 6.  Thus, the relevant evidence was
28   not barred by the litigation privilege.

and jury instruction on this issue, with one minor exception.  In addition, Cargill proposed to submit

its own claim pursuant to Cal. Civ. Code sec 3426.4 to the jury. Doc. 410, p. 2.  On the last day of trial,

Cargill continued to maintain its position that bad faith was a jury issue, as the following exchange

illustrates:

> [Progressive]: The verdict form is still absent of the issue regarding bringing a
> misappropriation claim and bad faith, your Honor.  And we believe that right after the
> jury is confronted with the initial question of whether or not there was a
> misappropriation, if they mark "no," they should be sent directly to a question like this:
> Was Cargill's claim that the Progressive parties misappropriated trade secrets brought
> in bad faith? Yes or no.
> ***
> [Cargill]: I think that should be decided after the jury rules on the merits of the claim.
> I mean I–what's the case here for bad faith your Honor?
> ***
> Court: When you say this is something they should decide later, who?
> [Cargill]: *The jury*, after they decided there was misappropriation.
> Court: You mean bring them back and send them back out?
> [Cargill]: Sure, just like you would on punitive damages.

Day 7 Tr. 1160:7-1162:2 (emphasis added).  Thus, Cargill never objected to submission of this issue

to the jury.

Additionally, submission of the bad faith issue to the jury does not constitute error as a matter

of law.  A court may submit this issue to the jury.  *See, e.g., O2 Micro Intern'l Ltd. v. Monolithic Power

Systems, Inc.*, 399 F. Supp. 2d 1064, 1080 (N.D. Cal. 2005) ("With regard to a claim of

misapppropriation of trade secrets, attorneys' fees are not mandatory even if the jury finds willful and

malicious misappropriation."); *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34 (1992) (jury

found defendants' misappropriation was brought with malice).  Accordingly, a new trial is unwarranted

on these grounds.

**Verdict Contrary to the Weight of the Evidence**

Cargill argues that the jury verdict was against the clear weight of the evidence in this action.

While substantial evidence supporting the verdict bars a judgment as a matter of law, the Court may

grant a new trial if, in its view, the verdict is against the clear weight of the evidence.  *Landes Const.

Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).  In considering a motion for

a new trial, the verdict is not presumed correct and the court need not view the evidence in the light

most favorable to the party in whose favor the verdict was rendered.  *Id*. at 1371.  The court must weigh

the evidence and assess for itself the credibility of witnesses and may set aside the verdict of the jury even though supported by substantial evidence. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). A new trial may be granted if "the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 819 (9th Cir. 2001).

The Court finds that, based on the totality of the evidence, the jury verdict was not against the clear weight of the evidence. In this motion, Cargill's focus on a few statements is misplaced and ignores evidence that the jury may have considered. The jury heard eleven days of testimony and saw dozens of exhibits. The jury was entitled to weigh the evidence and consider the credibility of witnesses. Based on these considerations, and the evidence presented during the jury trial, the Court is not "left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc.,* 833 F.2d at 1371-72.

The jury could have concluded reasonably that Cargill's "information" did not fit the definition of a "trade secret." The evidence demonstrated that the information was given to others outside of Cargill, the information was accessible, Cargill allowed Mr. DeGroff to keep the information when he left and did not demand that he return it or keep it secret, and that Cargill did not have a clear policy of what information was a trade secret. *See, e.g.*, Day 3 Tr. 66:9-17; 61:25-62:13 (Testimony of Mike Jerred); Day 8 Tr. 749:24-750:9; 751:16-754:6 (Testimony of Mike Watson); Day 5 Tr. 143:24-144:1 (Testimony of Robert Shubert). Although the Progressive Defendants admitted that they deleted files on their Cargill computers, the clear weight of the evidence does not necessarily resolve the misappropriation claim in Cargill's favor. For example, Ms. Jonkman testified that although she removed files from her laptop computer, the information remained on "Cargill computers" and Cargill would still have access to the information. Day 10 Tr. 1238:25:1242:16. Mr. Budine testified that the information he deleted on his laptop was personal information. Based on the evidence presented, the jury could well have believed that the deleted information was personal, was not deleted wrongfully, or was not a Cargill trade secret.

Similarly, the evidence supports the jury's verdict on Cargill's other claims. As to Cargill's

claims against the Progressive Defendants for breach of contract, the evidence demonstrates that the Progressive Defendants work on Progressive Dairy Solutions occurred after work hours, on weekends, or during vacation time. *See* Testimony of Ms. Jonkman, Mr. Sundberg, Mr. Budine, and Exhibits of PDS Planning Meeting Minutes. As to Cargill's claim against Mr. Budine for breach of a fiduciary duty, the jury could have believed, as discussed above, that the work was done outside business hours. The jury could have also agreed with Todd Hall, President of Cargill, who testified that anyone may leave a company properly so long as it does not interfere and conflict with "Cargill work." Day 2 Tr. 220:8-222:1. Mr. Budine testified that the premix package for Progressive Dairy Solutions was manufactured *after* he resigned from Cargill. Day 10 Tr. 1360:5-8.

Much of what Cargill now argues concerning evidence deals with *conflicting* evidence. The jury was well within its province to determine which evidence was correct based on credibility determinations. Cargill does not demonstrate that the jury verdict is against the clear weight of the evidence or was based on prejudicial and impermissible evidence. On the contrary, admissible and relevant evidence supports the jury's verdict on each of Cargill's claims. Accordingly, Cargill's motion for a new trial is denied.

### CONCLUSION AND ORDER

For the foregoing reasons, this Court:

1.      DENIES Cargill's motion for a new trial; and

2.      VACATES the October 27, 2008 motion hearing.

IT IS SO ORDERED.

**Dated:    October 8, 2008**                              **/s/ Lawrence J. O'Neill**
                                                             UNITED STATES DISTRICT JUDGE